In re the MARRIAGE OF Robert L. BENSON and Camy A. Benson.

Upon the Petition of Robert L. Benson, Appellant.

And Concerning Camy A. Benson, Appellee.

No. 94–1304.

Supreme Court of Iowa.

March 20, 1996.

Henry E. Nathanson of Johnston, Potterfield & Nathanson, P.C., Cedar Rapids, for appellant.

Stephen B. Jackson and Stephen B. Jackson, Jr., Cedar Rapids, for appellee.

HARRIS, Justice.

We granted further review of a court of appeals decision affirming a district court order dissolving the parties' marriage. We did so in order to critique the division of benefits under a pension plan. Because we also agree with the trial court's determination, we affirm.

Robert (born in 1939) and Camy (born in 1943) Benson were married in 1962. They adopted two sons, one of whom was killed in a 1987 traffic accident. Welfare of the other son is not involved.

Beginning in 1962 Robert worked as a union truck driver. Camy was employed as a beautician for a number of years until 1978 when she became manager of an apartment complex.

Camy continued her employment in this capacity until 1991, when she left to work in an antique shop. She viewed this career change as preparation for a postretirement enterprise: Robert had an interest in buying and refurbishing antiques and the goal was for the couple to start an antique business upon Robert's retirement. When it became apparent the marriage was in trouble, Camy quit this job and found a job with another apartment complex. When her old position as apartment manager reopened, she returned to work there.

Although Robert's employment was sporadic at times, over the course of the marriage his income was higher than Camy's. At the time of trial Robert had an annual gross income of $35,772 and Camy's was $21,288. In addition to their annual incomes, each party received other benefits such as health insurance. In particular Robert had almost twenty-five years of credit in a union pension plan. The plan is a noncontributory, defined benefit plan, and was vested at the time of trial. Camy received free rent and utilities at the apartment complex she managed, valued at a minimum of $515 per month.

The district court dissolved the parties' marriage. The court awarded Camy alimony of $500 per month for five years and, of special interest here, also awarded her a portion of Robert's pension plan by establishing a formula to divide his future pension benefits. The remaining marital assets were divided equally.

Robert appealed. The court of appeals affirmed on all counts and refused to award Camy attorney's fees. It is from this decision that Robert sought and was granted further review. Camy again seeks attorney fees for defending the appeal. Our review in this equitable proceeding is de novo. Iowa R.App.P. 4.

I. Robert first claims the district court erred by devising a formula which awards Camy a percentage of the future value of his pension benefits. As we shall explain, courts considering marriage dissolution cases face numerous problems dividing future benefits under pension plans. These problems seem to be increasing both in frequency and difficulty. Some background discussion might be helpful.

A pension plan is "a plan established and maintained by an employer primarily to provide systematically for the payment of [generally ascertainable] benefits to ... employees, or their beneficiaries, over a period of years (usually for life) after retirement." Black's Law Dictionary 1135 (6th ed. 1990). The two broad classifications of pension plans are government-administered plans and private plans. Government plans include the railroad retirement system, the federal old age and survivors insurance system, and federal, state, and local government employee retirement systems. Private plans include those established by industry, nonprofit, educational, and charitable organizations, and those created by individuals who have no employment-related coverage. Private plans may be either "qualified" or "nonqualified" under the internal revenue code, with qualified plans receiving special tax advantages. *See generally* 26 U.S.C. § 401 (1988); The Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1381 (1985).

To understand the process by which the accumulation of pension benefits may eventually lead to the disbursement of pension payments, it is important to grasp the meaning of three distinct terms: maturity; vesting; and accrual. The word "matured" simply refers to the point in time when benefits commence. Put another way, "matured" describes the status of pension benefits when "all requirements have been met for *immediate* collection and enjoyment." *Cearley v. Cearley*, 544 S.W.2d 661, 664 n. 4 (Tex.1976) (emphasis added).

The word "vest" is a legal concept referring to "an immediate, fixed right of present or future enjoyment." Black's Law Dictionary 1563 (6th ed. 1990). In the context of pensions, a plan is said to be completely "vested" when "an employee (or his or her estate) has rights to *all* the benefits purchased with the employer's contributions to the plan even if ... the employment relation terminates before the employee retires." *Id.* (emphasis added). Vesting provisions vary considerably from pension plan to pension plan with respect to the types of benefits which will vest (retirement, death, and/or disability), the point in time at which vesting will occur (immediately vs. deferred), the rate at which payments will vest (a full 100% vs. a graded percentage scale), and the form in which benefits will vest (deferred claims, annuity contracts, etc.). *See* Steven R. Brown, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post-judgment Partition Actions: Cures for the Inequities in* Berry v. Berry, 39 Baylor L.Rev. 1131, 1146 (1987).

Benefit "accrual" refers to the specific dollar amount credited to or accumulated by an individual plan participant at a given point in time. *Id.* at 1148. Accrual is not a legal concept, but rather a phrase borrowed from actuarial and accounting principles. Utilizing the two previously defined terms, we can see there are three basic periods within which pension benefits "accrue." At the beginning of employment, after the employee satisfies the pension plan's conditions for participation, the employee's pension interests will be nonvested and unmatured. After the employee participates under the plan for

a certain length of time and receives an unconditional ownership interest in a portion of the contributions made by his or her employer, the pension benefits are vested but still unmatured. Finally, when the employee obtains the immediate and present right to begin drawing the pension benefits, generally upon retirement, the employee's interest will be vested and matured. Benefits accrue during each of these three periods in accordance with the plan's accrual schedule. *See id.* at 1155–56. The ·rate of the benefit accrual depends upon the type of pension plan.

There are two principal types of private pension plans: defined benefit plans and defined contribution plans. These plans are similar in that both may be funded by contributions made either solely by the employer (noncontributory) or by both the employer and the employee (contributory). They are distinct however in that:

> Under a defined benefit plan, the *future benefit* to be received is specified in advance and "defined" by a benefit formula or benefit schedule. The plan contributions are then made as required to fund the specified benefit. Conversely, under a defined contribution plan, the *contributions* to the fund are specified and "defined," but there is no predetermined scale of retirement benefits. Instead, the benefit amount received by the retiring employee is determined by the accumulated contributions allocated to that employee at retirement.

*Id.* at 1137–38. Because Robert's pension plan is a noncontributory, defined benefit plan, we focus on this type of plan.

As mentioned, in a defined benefit plan the future benefit is specified in advance by a formula. Defined benefit plans commonly utilize one or a combination of the following four basic formulas: (1) a *flat amount* formula, which provides a flat benefit that is unrelated to the employee's earnings or length of service; (2) a *flat percentage of earnings* formula, which provides a benefit that is related to earnings but unrelated to length of service; (3) a *flat amount per year of service* formula, which provides a benefit that is related to length ·of service but unrelated to earnings; and (4) a *percentage of earnings*

*per year of service* formula, which provides a benefit that is related to the employee's earnings and length of service. *Id.* at 1141–42. Thus, depending upon the formula, the future benefit payable by a defined benefit plan may contain two variables: (1) years of service; and (2) earnings.

■ We have considered the effect of pensions in dissolution actions on a number of occasions. Under Iowa law pensions are characterized as marital assets, subject to division in dissolution actions just as any other property. *In re Marriage of Branstetter,* 508 N.W.2d 638, 640 (Iowa 1993). The valuation and division of pension benefits has nevertheless become the subject of considerable litigation in recent years. The problem may arise in a number of different factual situations. *See In re Marriage of Mott,* 444 N.W.2d 507, 510–11 (Iowa App.1987) (considering situations where the benefits were (1) vested and matured, (2) vested but unmatured, and (3) unvested and consequently unmatured). We have recognized two general ways for a court to divide and distribute pension benefits.

■ One method is to determine the present value of the benefits and allocate a share to the pensioner's spouse (the present-value method). *Branstetter,* 508 N.W.2d at 642 (citing *In re Marriage of Bevers,* 326 N.W.2d 896, 900 (Iowa 1982)). Although this method has the advantage of immediate distribution, it also has several disadvantages. Valuation of a pension is complicated (especially when the plan is unvested) and requires the services of an actuary. *Mott,* 444 N.W.2d at 511. Moreover the financial obligation resulting from a lump sum payment is often beyond a pensioner's present economic ability to pay. *Id.*

■ The second method is to award the spouse a percentage of the pension, payable when benefits become matured (the percentage method). *Branstetter,* 508 N.W.2d at 642 (citing *In re Marriage of Howell,* 434 N.W.2d 629, 633 (Iowa 1989)). As the trial court correctly noted, this percentage is based on the number of years the employee accrued benefits under the plan during the parties' marriage in relation to the total years of benefits accrued at maturity. This method has the advantage of allowing deferred payment, and it properly allocates the risk between the parties (in the event the pension is not vested). *Mott,* 444 N.W.2d at 511. It has however been noted that care must be taken when setting the formula so that the recipient spouse does not become entitled to any post-dissolution increases in pension benefits. *See In re Marriage of Klein,* 522 N.W.2d 625, 628 (Iowa App.1994) (discussing the court of appeals' cases developing this rule). Only the net worth of the parties at the time of the trial is relevant in adjusting their property rights, and our courts have interpreted this rule to mean that any increase in the pension benefits accrued after a dissolution decree cannot be considered marital property. *See id.*

■ In the present case the district court opted to utilize the percentage method when dividing Robert's pension benefits, fashioning the following formula for determining Camy's share of any payout of matured benefits from Robert's pension plan. A fraction is first computed, the numerator being the number of years during the marriage Robert accrued benefits under the pension plan (twenty-five) and the denominator being the total number of years Robert's benefits accrued prior to maturity (*i.e.,* receipt of payments upon retirement). This fraction represents the percentage of Robert's pension attributable to the parties' joint marital efforts. This figure is then multiplied by Camy's share of the marital assets (fifty percent). Finally this second figure is multiplied by Robert's total accrued monthly benefit upon maturity (retirement) to calculate Camy's share. The equation may be expressed as follows:

$$\text{Camy's share} = \frac{\text{\# of years Robert was both married and covered by the pension plan (25)}}{\text{\# of years covered by plan prior to conclusion (maturity)}} \times 50\% \times \text{value of monthly pension benefit}$$

Robert finds fault with this formula, contending it enables Camy to receive a percentage of any post-dissolution increases in pension benefits—increases to which Robert claims he alone is entitled. Robert maintains the court should have awarded Camy only a percentage of the pension plan's present value at the date of trial. Robert agrees however with the court's method of requiring payment to Camy only when the benefits are paid out to him.

At first blush there is some appeal in Robert's contention. A series of appellate cases cited by the parties has developed the proper application of the percentage method. These cases however have not led to consistent results. *See Mott,* 444 N.W.2d at 511 (granting a fixed percentage of an unvested and unmatured pension, calculated and payable at maturity); *In re Marriage of Curfman,* 446 N.W.2d 88, 90 (Iowa App.1989) (creating a percentage formula granting an interest in a defined benefit plan which was unvested—contingent upon survival—and unmatured, calculated and payable at maturity); *In re Marriage of Oler,* 451 N.W.2d 9, 12 (Iowa App.1989) (granting an interest in the wife's IPERS benefits under the percentage method, calculated and payable at maturity— but granting an interest in the husband's vested but unmature pension under the percentage method by calculating/locking in the value at the vested rate accrued at the time of dissolution, but not payable until maturity/retirement); *In re Marriage of Fuchser,* 477 N.W.2d 864, 866 (Iowa App.1991) (granting an interest in a military pension under the percentage method with the amount locked in—calculated at a value fixed at the time of dissolution—but not payable until maturity); *In re Marriage of Hornung,* 480 N.W.2d 91, 95 (Iowa App.1991) (granting an interest under the percentage method apparently to be calculated and payable at maturity).[1] The unresolved question is the time at which we are to set the "value" of the benefit for purposes of calculating the equation: the vested value accrued at the time of dissolution (*i.e.,* the amount the pensioner *would be* entitled to receive if he or she were to retire immediately and begin drawing benefits) or the value accrued at maturity (*i.e.,* the amount the pensioner *actually receives* when he or she finally begins to draw benefits— generally at retirement).[2]

Camy argues she is entitled to receive the increase for three reasons. She first points out that the more years Robert works beyond the dissolution, the smaller the fraction becomes which is used to compute her share of the benefits. This gives Robert an incentive to continue working. Furthermore, as the pension plan is noncontributory, Robert is not required to make any personal contributions. Camy also notes Robert is only able to reach these higher benefits levels

1. It is important to note that these cases did not draw a distinction between defined benefit plans and defined contribution plans. In fact in most cases the court did not specifically classify the type of plan involved. As one commentator noted:

    Because defined contribution plans are essentially savings plans, their value at any time, including at [dissolution], is determined easily. The value of such plans is the amount of accumulated contributions plus interest as of the valuation date. It follows that the value of the [marital] interest in defined contribution plans is the amount of contributions made during [the marriage] plus accumulated interest on these contributions.

    Phoebe Carter & John Myers, *Division and Distribution of the Community Interest in Defined Benefit Pensions:* Schweitzer *Reconsidered,* 18 N.M.L.Rev. 95, 98 (1988). Thus, it may be more appropriate to divide and distribute defined contribution plans under the present-value method.

2. The impact of this determination can be demonstrated mathematically by utilizing the figures found in respondent's exhibit four. Rounding to the nearest year, at the time of the dissolution decree Robert was age fifty-five and had accumulated twenty-five years of pension benefits during the marriage. The pension is fully vested. This entitles Robert to $1500 per month in pension benefits if he retires immediately. Camy is entitled to a fifty percent share of this amount, $750 per month, as it is marital property. Let us assume instead that Robert opts to continue working for ten more years, and retires at the age of sixty-five. He would then be entitled to $3000 per month in pension benefits. If we apply the formula fashioned by the district court to this amount, Camy would be entitled to a $1071 share of the monthly benefit payment. ($25/35 \times 50\% \times \$3000 = \$1071.43$.) This figure represents a $321 increase from the amount Camy would have been entitled to if Robert had retired at the time of the dissolution decree (*i.e.,* had the benefit "value" been set at the amount vested but unmatured at the time of the decree).

because of the base of pension benefits accrued with her help during the marriage. In this regard, the district court observed:

> [Robert] wishes to freeze [Camy] out of better benefits despite the fact that they have been married for thirty years and for the entire time during which [Robert] has been employed by the [union]. This does not appear to me to be equitable since [Camy] is denied the benefits of the twenty-five years that she put into the marriage and [Robert] gets all the benefits of the base which [Camy] helped secure.

Camy's argument can be supported on financial grounds. Under the percentage method, Robert receives an advantage because payment of Camy's share of his pension is deferred until his benefits mature. Because payment is deferred, if we "lock in" the value of Camy's interest at the time of dissolution, it would prevent her from earning a reasonable return on her interest. *See Fuchser,* 477 N.W.2d at 868 (opinion concurring in part and dissenting in part) (noting that locking in the value of the pension benefit at the time of initial vesting would inequitably deprive the pensioner's spouse of cost-of-living increases). To prevent this occurrence it is preferable to set the value of the benefit for purposes of the equation at the time of maturity. The logic of this approach can be seen from an examination of how pension contributions are managed in a defined benefit plan. In such a plan, the employer pools all contributions (the employer's, and the employee's if contributory) into one *common fund.*

> During the time from [dissolution] to retirement ... the entire fund—comprised of the employee spouse's separate property interests and the nonemployee spouse's separate property interests—continues to establish its earnings profile over time. Since these separate property interests are combined until retirement, the plan administrator can invest [both] the employee spouse's [and the nonemployee spouse's] separate property in the fund. This "added" investment value increases the fund's earning power, which in turn is used (and may be necessary) to create the employee's future "defined" benefit.... The "de-

fined" benefit received by the employee spouse is made possible ... in part by the use of the nonemployee spouse's separate property interest in the fund. The entire amount of earnings attributable to the nonemployee spouse's separate property interest remains within the fund, committed to create the "defined" benefit. [If] [t]he nonemployee spouse receives only his [or her] value as calculated and "frozen" *on the date of [dissolution],* [it] allows the employee spouse to reap the benefits of the earnings attributable to the nonemployee spouse's separate property interest in the fund. The actual earnings attributable to the nonemployee spouse's separate property interest cannot be *awarded* to the nonemployee spouse, as a separate value, because they are needed to generate the value of the ultimate "defined" benefit. [I]t seems inequitable for a ... court to "freeze" the value of the nonemployee's interests in the pension benefits at [dissolution] and prohibit that spouse from realizing *any* investment income generated from his [or her] separate property interest.

Brown, 39 Baylor L.Rev. at 1188–89.

For purposes of calculation under the percentage method, we think the value of the pension benefit is to be determined at the time of maturity (here, retirement). We therefore hold the trial court was correct in employing this method.

■ II. Robert also assigns error in the award of alimony to Camy ($500 per month for five years). Even though our review is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity. *In re Marriage of Wahlert,* 400 N.W.2d 557, 560 (Iowa 1987). This deference to the trial court's determination is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize.

Especially in view of the trial court's latitude in such matters, we agree with the

alimony award. We note the parties have differing earning capacities. We also observe that Camy's right to enjoy the benefit of Robert's pension plan must be postponed. We therefore find no merit in Robert's challenge to the alimony award.

III. Camy requests appellate attorney's fees. An award of attorney's fees is not a matter of right but rests within the discretion of the court. *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989). The court considers the financial positions of the parties and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Williams*, 303 N.W.2d 160, 167 (Iowa 1981). Because the terms of the dissolution decree have left the parties in relatively similar financial situations, we order Robert and Camy to each pay their own attorney's fees for this appeal. Costs on appeal are taxed to Robert.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except LAVORATO, LARSON and TERNUS, JJ., who dissent.

LAVORATO, Justice (dissenting).

I dissent to division I and II of the majority's opinion.

The majority states the issue this way:

The unresolved question is the time at which we are to set the "value" of the benefit for purposes of calculating the equation: the vested value accrued at the time of dissolution (i.e., the amount the pensioner *would be* entitled to receive if he or she were to retire immediately and begin drawing benefits) or the value accrued at maturity (i.e., the amount the pensioner *actually receives* when he or she finally begins to draw benefits—generally at retirement).

The majority thinks the value should be the amount the employee spouse actually receives at maturity. I think the value should be the amount the employee spouse would be entitled to receive if he or she were

to retire immediately and begin drawing benefits.

The result the majority reaches does violence to two fundamental principles guiding our review of property division in dissolution of marriage cases. First, in such cases, marriage partners are entitled to "a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa App.1993) (citation omitted). While we do not require an equal division, we do require what is fair and equitable in each particular case. *Id.* Second, we divide property the parties own at the time of the dissolution and do not consider property they may acquire after the dissolution. *See In re Marriage of Muelhaupt*, 439 N.W.2d 656, 661 (Iowa 1989) (husband not entitled to interest in wife's expected future inheritance); *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App. 1984) (property division in dissolution action would not be based on speculation of husband's expected future inheritance).

Relying on these two principles, the court of appeals has, over the last several years, set the value of the pension benefits at the amount the employee spouse would be entitled to receive if he or she were to retire immediately and begin drawing benefits.

*In re Marriage of Voss*, 396 N.W.2d 801 (Iowa App.1986) dealt with an issue involving the present value method of valuation of a pension plan. Although here the method of valuation is different, the court's reasoning would nevertheless apply. In *Voss*, the wife's expert testified the husband would receive a pension of $1500 per month at age sixty-five and it would cost $188,000 to buy an annuity to pay a man the husband's age $1500 per month commencing at age sixty-five. *Id.* at 803. The husband was fifty-four at the time of trial. *Id.* at 802. Rejecting the expert's testimony, the court said:

The difficulty with the testimony of [the wife's] expert is it is based on the assumption [the husband] will continue to accrue benefits for ten more years. Furthermore, the additional accrual after dissolution is property [the husband] acquires *after* the dissolution. There is no basis to award [the wife] an interest in property [the hus-

band] will acquire *after* the dissolution. The value of the plan at [the] time of dissolution is what is relevant. [The wife] should have no interest in the increase between the time of dissolution and retirement.

*Id.* at 803 (emphasis added). *See also In re Marriage of Keifer*, 451 N.W.2d 19, 21 (Iowa App.1989) (rejecting a future value method of pension valuation because it "would unduly extend [the wife's] interest in the future financial affairs of [her husband] following the dissolution").

*In re Petition of Sturtz*, 415 N.W.2d 173 (Iowa App.1987) (en banc) presents a different twist but the court implicitly followed its *Voss* reasoning. The court apportioned the husband's pension benefits in the form of periodic alimony. The husband had vested pension rights at the time of trial totaling $448 per month. If the husband continued in his employment for five more years, his pension benefits would increase to $1000 per month. The court awarded the wife $250 per month based presumably upon the pension benefits of $448 per month at the time of trial instead of the $1000 per month benefits the husband would receive after the dissolution. *Id.* at 174.

In the same year it decided *Sturtz*, the court of appeals rendered a modification decision in which it presented a cogent reason why a nonemployee spouse should not share in an employee spouse's pension benefits accruing after the dissolution. *See In re Marriage of Skiles*, 419 N.W.2d 586 (Iowa App. 1987). In *Skiles*, the district court extended the former wife's alimony and determined she should receive thirty-five percent of her former husband's pension. *Id.* at 587. The court of appeals reversed the decision, termi-

nated the alimony, and denied the former wife's request that she receive part of her former husband's pension. In rejecting this request, the court reasoned this way:

[The former husband] does have a superior financial position. His income since the dissolution has been greater than [the former wife's]. [He] has established a new family. *He and his new spouse have made substantial contributions toward his retirement. We cannot ignore the efforts of his new spouse and her rights to share the pension benefits she has helped [her husband] accumulate.*

*In re Marriage of Skiles*, 419 N.W.2d at 589 (emphasis added).

Like the case here, *In re Marriage of Mott*, 444 N.W.2d 507 (Iowa App.1989) involved a percentage of benefits valuation. At the time of trial, the husband had been working for the same company for twenty-six years, was still working, and his pension with the company was 100% vested. The parties had been married twenty-two years. *Id.* at 508. The court determined that (1) the pension should be distributed according to its present worth, and (2) the wife should receive a percentage of the accrued benefits based on the years of marriage. At the time of trial, the accrued benefits were $1790 per month, of which $1515 constituted marital property. Contrary to the majority's formula, the *Mott* court limited the wife to a percentage—thirty-five percent—of the accrued benefits considered to be marital property ($1515) *as of the date of trial. Id.* at 511.

Significantly, the formula the court used was this:

The wife's share = $\dfrac{\text{\# of years parties were married (22)}}{\text{\# of years husband worked and accumulated pension benefits (26)}} \times 35\% \times \$1515$ per month (marital property pension benefits as of date of trial)

*Id.*

In a case decided the same year, the court of appeals used the same formula it had used

in *Mott*. *See In re Marriage of Oler*, 451 N.W.2d 9 (Iowa App.1989). Significantly, the court said:

[The husband's] pension benefits are calculated at the present to be $977.55 per month. All of this was earned during the marriage. *This amount will increase in the future. [The husband] is entitled to 100% of any increase in the pension benefits accruing after the marriage. Since the present accrued benefits [are] 100% marital property, [the wife] should be entitled to fifty percent (50%) of those benefits.* *Id.* at 12 (emphasis added). The court went on to reverse the district court's determination that those benefits should be paid when the husband is first eligible to retire. Instead, the court deferred payment until the husband actually retires, noting that this "will ensure that there is an equitable division of the benefits." *Id.*

Again, in *In re Marriage of Williams,* 449 N.W.2d 878 (Iowa App.1989), the court of appeals used the same formula it had used in *Mott* and *Oler.* Again it noted that the pension should be distributed according to its present worth and should be paid when the husband retires. *Id.* at 882. At the time of trial the accrued benefits were $839.51 per month. Of this amount, the court determined $665.81 constituted marital property, that is, the amount of benefits accrued during the marriage. The court awarded the wife fifty percent of this amount. *Id.*

*In re Marriage of Fuchser,* 477 N.W.2d 864 (Iowa App.1991) involved a military pension. The parties had been married sixteen years. The husband was in his nineteenth year of military service at the time of trial. He would be eligible for a pension of $1497.70 per month if he chose to retire at the end of twenty years. He had the option of continuing his military service, which would increase his pension fund and benefit. The court of appeals determined the wife was not entitled to a percentage of benefits accumulated in the pension if the husband elected to continue his military service beyond the twenty-year period. *Id.* at 866.

In determining how much of the $1497.70 was marital property, the court used the same formula it had used in *Mott, Oler,* and *Williams:*

[The husband's] accrued pension benefit at the end of twenty years of service is $1,497.70 per month. [The wife] should receive a percentage of the accrued benefits based on the years of the marriage. The appropriate portion of the pension accumulated during the marriage is 16/20. Sixteen represents the duration of the marriage. Twenty represents the total number of years [the husband] worked, accumulated and became eligible for pension benefits. The total benefits therefore, which are marital property, amount to $1,198.16 per month.

*Id.* at 866. The court awarded the wife fifty percent of the pension benefits identified as marital assets or $600 ($1198.16 × 50%) per month as her portion of the military pension. The court (1) determined this to be a fixed amount, (2) expressly provided any increase as a result of continued military service belonged to the husband and would not be distributable to the wife, and (3) ordered that the $600 monthly benefit be paid to the wife as benefits were paid to the husband. *Id.*

Finally, as recently as 1994, the court of appeals emphasized that

[i]t is the net worth of the parties at the time of trial which is relevant in adjusting their property rights. Pension contributions made as a result of post dissolution employment is property acquired after the dissolution. An increase in pension rights resulting from contributions made after a decree of dissolution but before retirement is the result of efforts made after the dissolution.

*In re Marriage of Klein,* 522 N.W.2d 625, 628 (Iowa App.1994) (citations omitted).

In *Klein,* the dissolution decree entered in 1988 divided the husband's defined benefits pension plan between the parties, awarding the wife one half of the pension benefit the husband was entitled to receive at the time of the dissolution. The decree provided for a later entry of a qualified domestic relations order. The wife sought such an order four years later and asked that she be designated the sole survivor under the pension plan. *Id.* at 626. The district court adopted the wife's position and required the husband to name the wife as his "surviving spouse for all purposes." *Id.* at 627. The husband contended

the order provided a result that could likely result in the wife—who was younger than he—receiving not only one half but all of the pension benefits he earned and continued to earn. The husband was forty-six at the time of the dissolution, and if he retired at sixty-five, that meant the wife would receive an additional nineteen years of pension benefits accrued after the dissolution. The court of appeals agreed and modified the order requiring the wife to be named as a survivor to one half of the pension benefits accrued at the time of the dissolution. In doing so, the court referred to its *Skiles'* opinion and noted that it could not ignore the rights of any new spouse to share in the pension benefits accruing during the subsequent marriage. *Id.* at 628.

Other courts have followed the court of appeals' approach. *See, e.g., Ruggles v. Ruggles,* 116 N.M. 52, 860 P.2d 182, 197 (1993) (in case in which husband's retirement benefit was vested and matured but he did not yet plan to retire, wife was to receive monthly payment from husband equal to her share of benefit amount husband would receive were he to retire at time of trial); *Berrington v. Berrington,* 534 Pa. 393, 633 A.2d 589, 594 (1993) (same); *Berry v. Berry,* 647 S.W.2d 945, 946–47 (Tex.1983) (same). Rejecting a formula that set the value of the pension benefit at the time of retirement, the court in *Berry* said:

> However, to the extent that the benefits do increase as a result of future increased earnings, the formula used by the trial court has the effect of awarding benefits accruing to [the husband] after the divorce from [the wife].
>
> . . . .
>
> Retirement and pension benefits are a mode of employee compensation. It is clear from the record in this case that twelve additional years of work following divorce, which included some twelve to fourteen pay raises, plus union contract negotiations for an improved benefits plan, brought about the increase in retirement benefits paid to [the husband]. These post-divorce increases cannot be awarded to [the wife], for to do so would invade [the husband's] separate property, which cannot be done.

*Berry,* 647 S.W.2d at 946–47 (citations omitted).

As I mentioned, setting the value of the pension benefit at the time the employee spouse retires does violence to the principle that marriage partners are entitled to a just and equitable share of the property accumulated through their *joint* efforts. It also does violence to the principle that we divide property the parties own at the time of the dissolution and not property they may acquire after the dissolution. As the cases point out, this is especially so when the pension benefit increases post-dissolution because of increases in wages or improvement to pension plans brought about by union negotiations. This increase is not attributable to joint efforts of the parties but to the efforts of the employee spouse alone. To the extent the nonemployee spouse shares in this increase, he or she is sharing in a post-dissolution asset belonging to the employee spouse.

Setting the value of the pension benefit at the time the employee spouse retires can also prove to be unfair. For example, the marriage may be of short duration, say five years. Subsequently, the employee spouse remarries, works another fifteen years, enjoys a hefty increase in pension benefits because of wage increases and good union bargaining, and then retires. Should we ignore the new spouse and that spouse's rights in the pension? Should we penalize the employee spouse because he or she decided to stay on the same job for an additional fifteen years to enhance the pension benefits?

At the time of trial, Robert was fifty-five years old and had ten years to retirement. Under the union contract in effect at the time of trial, Robert would be entitled to receive $1060 per month at retirement. The majority mentions a figure of $1500 per month. The pension trustees were proposing this increase in pension benefits from $1060 to $1500 per month, but the proposal was contingent upon ratification of a union contract. I would therefore set the value of the pension benefit at $1060 per month rather than $1500. The $1060 is the value of the

benefit Robert would be entitled to receive if he were to retire immediately. Using the formula set out in *Mott* and the other court of appeals cases cited, I calculate Camy's share of the pension this way:

Camy's share = $\dfrac{\text{\# of years parties were married (25)}}{\text{\# of years Robert worked and accumulated pension benefits (25)}} \times 50\% \times \$1060$

(monthly property pension benefits as of date of trial)

Under this formula, Camy would receive $530 per month from Robert's pension beginning at the time Robert retires.

LARSON and TERNUS, JJ., join this dissent.