# IN THE COURT OF APPEALS OF IOWA

No. 13-1382
Filed May 29, 2014

IN RE THE MARRIAGE OF MATTHEW JAHNKE
AND CYNTHIA LAFLAME-JAHNKE

Upon the Petition of
MATTHEW JAHNKE,
        Petitioner-Appellee,

And Concerning
CYNTHIA LAFLAME-JAHNKE,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Kellyann M.

Lekar, Judge.


        Cynthia LaFlame-Jahnke appeals the district court ruling dissolving her

marriage to Matthew Jahnke.  **AFFIRMED.**


        Rebecca A. Feiereisen of Arenson & Maas, P.L.C., Cedar Rapids, for

appellant.

        Mark R. Hinshaw, West Des Moines, for appellee.


        Considered by Vogel, P.J., Mullins, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**GOODHUE, S.J.**

Cynthia LaFlame-Jahnke appeals the district court ruling dissolving her marriage to Matthew Jahnke. Cynthia contends the district court should have awarded her one-half of the unvested stock options earned by Matthew during the marriage, should not have treated the 2012 tax debt resulting from Matthew's employment and the American Express bill as marital debts to be born equally by the parties, and should have awarded Cynthia's claim for attorney fees.

## I. Background Facts and Circumstances

The parties were married in 1980 and have two adult children. Matthew has a degree in mechanical engineering and an MBA from the University of Chicago. Matthew worked while acquiring his degrees. He has consistently held well-paying jobs, and at the time of trial was working in a remote part of China as a project manager for John Deere. The China assignment resulted in extra pay because of separation, unusual expenses, and the lack of amenities Americans have come to expect. The China assignment is expected to end shortly. Matthew has worked at John Deere since 1998 and was assigned to the China project in 2010.

Cynthia worked full time from 1980 to 1983, did not work from 1983 to 1993, but in 1993 while the parties were living in Mexico, started a business to help foreign companies relocate their families in Mexico. Matthew's employment moved from Mexico in 1998 and Cynthia became unemployed, and remains unemployed at this time. Cynthia has an associate degree and was fifty-two at the time of trial. There is no indication she suffers from any disability or is unemployable.

Matthew filed for dissolution on April 17, 2012, and trial was held December 18, 2012. The parties do not have appreciable assets, except for Matthew's 401(k) and any pension rights he might have from John Deere or previous employers. The parties do have significant indebtedness. The trial court left the debt due on Cynthia's auto bill as her sole liability, obviously because of the difference in value of the automobiles each party received. In addition each party was left with the credit card debts in their individual names. Otherwise, the trial court ordered that Matthew make a withdrawal from his 401(k) plan in an amount sufficient to pay all of the remaining marital debt, including the amount necessary to pay the tax on the withdrawal. Matthew was sixty on August 24, 2013, so no penalty is anticipated. The amount remaining after payment of the debt and presumably the tax due was to be divided equally between the parties. The court attempted to divide the remaining property on a fifty-fifty basis, except that it left Matthew the unvested stock options in Deere & Co. Pursuant to an exhibit admitted at trial these options had a value of $33,987 if they had been vested so that they could have been exercised at that time.

Matthew was required to pay Cynthia's medical insurance through a COBRA arrangement as long as possible, and to continue to pay for a policy when COBRA was no longer available. He was also ordered to pay Cynthia $6000 a month in alimony until he retired and began drawing his John Deere pension. He was ordered to continue the existing life insurance policy with Cynthia named as beneficiary as long as alimony was due. All of Matthew's

pensions were divided according to the *Benson* formula. *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996).

## II. Standard of Review

In equitable proceedings we review the trial court's ruling de novo. Iowa R. App. P. 6.907. However, weight is to be given to the findings of the trial court, but we are not bound by them. *In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1998).

## III. Discussion

A. Unvested Stock Options

Cynthia asserts that the unvested stock options should have been divided between the parties on a fifty-fifty basis, the same as the other assets. Unvested stock options are by definition contingent upon what happens between now and the time of vesting. Matthew testified that vesting was delayed for three years after the issuance of the options. The trial court stated, "the value of the unvested stock options is difficult to virtually impossible to establish as the value will be determined at the time the stock vests." Matthew also testified he is considered an insider, and his sales of the options or stock after having exercised the option are restricted to be sold in a ten-day period every three months. Whether these stock options could be transferred and exercised by Cynthia as a non-employee is not clear from the record. The trial court noted the alimony awarded to Cynthia is substantial and Matthew is providing medical insurance for Cynthia until she reaches the age of sixty-five, and that these awards offset any interest that she might have in the unvested stock options. Considering the speculative nature of the stock options the trial court felt the

alimony and medical coverage was more appropriate. We see no error in the trial court's reasoning.

B. Consideration of the 2012 Income Tax Debt as a Marital Obligation

Cynthia cites *In re Marriage of Sullins*, 715 N.W.2d 242 (Iowa 2006), for support of her contention that Matthew's tax debt should be paid solely by him. In *Sullins* the court explicitly stated that Sullins' tax problems were "self-imposed and largely the result of imprudent business practices." *Sullins*, 715 N.W.2d at 252. In this case the tax obligation is a current tax liability with the added complexity that it was created by Matthew's employment outside the United States. *Sullins* has little or no application to the current facts or situation.

The record is replete with Matthew's efforts to provide an adequate source of income to Cynthia during the pendency of this dissolution. She had no other resources except joint assets and what Matthew provided. Provisions for her during the last year included a $2500 per month rental home, a $400 per month country club membership, and housekeeping assistance. Taxes accruing on an income earned during the pendency of a dissolution and used to support the parties or used to reduce their other marital obligations are appropriately considered a marital expense.

C. The American Express Obligation

The parties had entered into a document entitled Stipulation Regarding Asset Transfer on September 20, 2012. The document provided that Matthew would be permitted to use the American Express card during the pendency of the action, but all charges he incurred "after April 17, 2012 were to be his sole responsibility." The agreement ended with an inconsistent provision stating,

"nothing in the aforementioned stipulation precludes the parties from asserting their individual rights to any ultimate financial matter at trial." The trial court considered the American Express debt to be a marital debt and assessed one-half of it to each of the parties. The court has an obligation to divide the property of the parties equitably after considering among many other things "any written agreements made by the parties concerning property distribution." Iowa Code § 598.21(5)(k) (2011). The American Express account was used by Matthew as his living expenses and as such it was used to pay a marital obligation in the same manner as Cynthia's living expenses were considered a marital obligation. The inconsistent provisions in the agreement provide no guidance that affects the property division made.

### D. Cynthia's Attorney Fee Claim

In a dissolution matter an award of attorney fees is within the discretion of a trial court and will not be disturbed, absent an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). An award or disallowance of attorney fees is reversed only when the trial court's ruling is clearly unreasonable or untenable. *Boyle v. Alum-Line Inc.*, 773 N.W.2d 829, 832 (Iowa 2009). Cynthia received fifty percent of the net assets of the parties and $6000 per month in alimony, medical insurance until she is sixty-five, and a share of Matthew's retirement benefits per the *Benson* rule. As Cynthia asserts, Matthew currently has a significantly higher income than Cynthia has earning capacity. Nevertheless Matthew's foreign assignment is temporary in duration and his actual take home pay difficult to compute. Finally Cynthia does have the

ability to be gainfully employed.  The ruling denying Cynthia an award of attorney fees cannot be said to be clearly unreasonable and untenable.

Matthew seeks attorney fees for this appeal.  "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion."  *Sullins*, 715 N.W.2d at 255.  We determine the parties should pay their own appellate attorney fees.

**AFFIRMED.**