**IN THE COURT OF APPEALS OF IOWA**

No. 16-2078
Filed September 27, 2017

**IN RE THE MARRIAGE OF RICHARD L. COOK
AND SUSAN K. COOK**

**Upon the Petition of
RICHARD L. COOK,**
        Petitioner-Appellant,

**And Concerning
SUSAN K. COOK,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Jones County, Kevin McKeever,

Judge.


        Richard Cook appeals the pension and spousal support provisions of a

decree of dissolution of marriage. **AFFIRMED AS MODIFIED.**


        Michael K. Lang of Knuth Law Office, Anamosa, for appellant.

        Karen A. Volz of Ackley, Kopecky & Kingery, Cedar Rapids, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Richard and Susan Cook married in 1984 and divorced in 2016.  Richard appeals the pension and spousal support provisions of the dissolution decree.

## I.    *Background Facts and Proceedings*

Richard was fifty-nine years old at the time of trial, had a high school education, and was in good health.  He farmed 183 acres owned by his father and later placed in trust.  He also worked for the Cryovac Division of Sealed Air Company from 1975 until 2009, when the company relocated to another state.  He held various temporary positions after that point.

Susan was fifty-seven years old, had a high school education, and was in good health.  She initially worked on an assembly line.  During her first pregnancy, she and Richard agreed she would give up her employment.  In 1998, she resumed employment as a preschool paraprofessional, working approximately thirty hours a week.  She later added a weekend job as a housekeeper.

At the time of trial, the couple's three children were adults and the sole issues for resolution involved property and spousal support.  The district court set aside Richard's inherited property to him and attempted to equally divide most of the couple's joint assets and the largest of the couple's liabilities.  Richard's pension from his thirty-four years of employment with Sealed Air was divided pursuant to a qualified domestic relations order (QDRO) affording Susan "50% of the marital factor of 31/34."[1]  As for spousal support, the court ordered Richard to

---

[1] The QDRO provided:

pay Susan $800.00 per month until "Susan dies, Richard dies or Susan remarries."

Richard moved for enlarged findings and conclusions. The district court denied the motion and this appeal followed.

## II. Analysis

### A. Pension

Richard argues the numerator of the pension formula used by the district court should be twenty-five rather than thirty-one to reflect the amount of time he accrued pension benefits during the marriage. Susan counters that the district court correctly used thirty-one in the numerator of the formula because that is how long the couple was married. Richard has the better argument.

Richard had a defined benefit pension plan. *See In re Marriage of Benson*, 545 N.W.2d 252, 254 (Iowa 1996) ("Under a defined benefit plan, the *future benefit* to be received is specified in advance and 'defined' by a benefit formula or benefit schedule." (citation omitted)). Susan was to receive "a percentage of the pension, payable when benefits become matured (the percentage method)." *Id.* at 255. "[T]his percentage is based on the number of years the employee accrued benefits under the plan during the parties' marriage in relation to the total years of benefits accrued at maturity." *Id.* The formula is as follows:

---

This Order assigns to Alternate Payee an amount equal to the actuarial equivalent of **50%** of the marital portion of the Participant's Accrued Benefit under the Plan as of the Participant's benefit commencement date, or the Alternate Payee's benefit commencement date, if earlier. The Marital portion shall be determined by multiplying the Participant's accrued benefit by a Coverture Fraction the numerator of which is 31 and the dominator of which is 34.

$$\frac{\text{Number of Years Both Married and Covered by Pension Plan}}{\text{Total Number of Years Covered by Pension Plan Prior to Maturity}} \times 50\% \text{ (Marital Share)}$$

*See id.*

Applying this formula, Richard married Susan in 1984. Although he was married for thirty-one years, he was both married and covered by the pension plan for only twenty-five years—1984 to 2009. The appropriate figure for the numerator of the formula was twenty-five rather than thirty-one.

*In re Marriage of Smith*, No. 16-0597, 2017 WL 362000, at *4-6 (Iowa Ct. App. Jan. 25, 2017), cited by Susan, does not persuade us to reach a contrary conclusion. In that case, this court declined to reduce the numerator by "the time [a spouse] was *both* married *and* contributing to the plan." *Smith*, 2017 WL 362000, at *5. But the spouse was "covered" by a defined benefit plan and continued working for the employer who contributed to the plan even after the employer discontinued employee contributions to the plan. *Id.* In contrast, Richard was not "covered" by the Sealed Air pension plan after 2009. *See Benson*, 545 N.W.2d at 255 (noting the numerator is the number of years in which benefits accrue).

We modify the pension-division provision of the dissolution decree to reflect a formula of 25/34 and we remand for entry of a corrected qualified domestic relations order. *See, e.g.*, *In re Marriage of Sullins*, 715 N.W.2d 242, 250 (Iowa 2006).

### B. Spousal Support

As noted, the district court ordered Richard to "pay [Susan] alimony in the amount of $800.00 per month" until "Susan dies, Richard dies or Susan

remarries." Richard concedes traditional alimony is appropriate given the length of the marriage, but he argues the amount of the award is excessive. He seeks a modification of the award to "$180.00 to 280.00" per month.

The legislature has enumerated several factors for consideration in awarding spousal support. *See* Iowa Code § 598.21A(1) (2015); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007). We afford the district court considerable latitude in resolving spousal support claims "and will disturb the ruling only where there has been a failure to do equity." *Benson*, 545 N.W.2d at 257.

As noted, this was a thirty-four year marriage. *See* Iowa Code § 598.21A(1)(a). Although Susan was healthy, her earning capacity was significantly lower than Richard's. *Id.* § 598.21A(1)(b), (d), (e). In the ten years leading up to the dissolution, she earned an average of approximately $8080.00 per year, with her highest earnings of $15,000.00 occurring the year before trial. *See In re Marriage of Gust*, 858 N.W.2d 402, 411 (Iowa 2015) ("In marriages of long duration, the historical record ordinarily provides an objective starting point for determining earning capacity of persons with work experience."). She disputed the opinion of a vocational expert, who opined she could earn significantly more if she returned to a factory job. She testified she had not performed factory work for thirty-one years and, at the age of fifty-seven, she doubted she could stand for ten- to twelve-hour shifts. But even if Susan's earning capacity were double her highest earnings, it would still amount to less than half of Richard's employment and farm earnings.

Richard earned an average of approximately $59,000.00 per year, with his highest taxed earnings of $80,097.00, occurring in 2012, after he lost his job at Sealed Air. Although his taxed earnings went down to $67,193.00 in 2013 and plummeted to $12,965.00 in 2014, his average taxed earnings were seven times more than Susan's over the ten years preceding trial and did not include his farm income of $6609 per year. In addition, Richard admitted he was "underemployed" and had no intent to retire any time soon. The earnings disparity weighs heavily in favor of the district court's award.

The distribution of assets also militates in favor of the $800.00 per month spousal support award. *See* Iowa Code § 598.21A(1)(c); *see also In re Marriage of Hardy*, 539 N.W.2d 729, 732 (Iowa Ct. App. 1995) ("[W]e consider . . . inherited and gifted property on the issue of alimony."). Although the district court putatively divided the assets equally—including proceeds from the sale of the family home and family farmland—our calculation discloses an unequal division favoring Richard by $19,272.96. Richard also retained a twenty-percent interest in his father's farm and family trust and inherited more than $71,000.00 in stocks and mutual funds.

We conclude the earnings disparity together with the unequal property division and Richard's inheritance support the district court's spousal support award of $800.00 per month. On our de novo review, it is clear Susan required that sum to meet her expenses, which included a health insurance payment of approximately $800.00 per month, assuming she was unable to qualify for Medicaid. It also is clear that Richard had the ability to pay this sum. *See Gust*, 858 N.W.2d at 411 ("'[T]he imposition . . . of an award of traditional alimony is

primarily predicated on need and ability.'" (quoting *In re Marriage of Wendell*, 581 N.W.2d 197, 201 (Iowa Ct. App. 1998))). We affirm the district court's spousal support award.

### C. Appellate Attorney Fees

Susan asks that we order Richard to pay her appellate attorney fees. Awards of appellate attorney fees are discretionary. *Sullins*, 715 N.W.2d at 255. Because Susan did not prevail on the pension issue, we decline her request. We also note that our affirmance of the spousal support award leaves her in a position to bear her own attorney fees.

**AFFIRMED AS MODIFIED.**