**IN THE COURT OF APPEALS OF IOWA**

No. 20-0556
Filed November 4, 2020

**IN RE THE MARRIAGE OF THOMAS DEAN NICHOLS
AND TERESA LORRAINE NICHOLS**

**Upon the Petition of
THOMAS DEAN NICHOLS,**
        Petitioner-Appellant,

**And Concerning
TERESA LORRAINE NICHOLS, n/k/a TERESA LORRAINE JOHNSON,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Black Hawk County, Linda M.

Fangman, Judge.


        Thomas Nichols appeals the denial of his application to amend a qualified

domestic relations order.  **AFFIRMED.**


        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,

Cedar Falls, for appellant.

        Jamie L. Schroeder of The Sayer Law Group, P.C., Waterloo, for appellee.


        Considered by Doyle, P.J., and Mullins and Greer, JJ.  Bower, C.J., takes

no part.

**MULLINS, Judge.**

Thomas Nichols and Teresa Johnson married on October 20, 1984. They separated on October 16, 1995, and the marriage was dissolved on May 19, 1997. The dissolution decree memorialized Thomas's agreement that one-half of his Iowa Public Employees' Retirement System (IPERS) pension "benefits up to the time of the parties' separation shall be awarded to" Teresa. The court ordered the parties to file proposed qualified domestic relations orders (QDRO) for the court's approval "to allow [Teresa] to receive one-half of the IPERS retirement plan from the time that [Thomas] joined the plan until the parties' separation." The court directed the following calculation:

> [Teresa] shall receive 50 percent of a fraction of [Thomas's] pension and pension payments. The numerator of this fraction shall be the number of years [Thomas] contributed to IPERS during the marriage, and the denominator of the fraction shall be the total number of years during which benefits were accumulated prior to being paid.

The ensuing QDRO included the following provision:

> IPERS is directed to pay benefits to [Teresa] as a marital property settlement under the following formula: 50% of the gross monthly or lump sum benefit payable at the date of distribution to [Thomas]. The forgoing percentage shall be multiplied by the "service factor." The "service factor" is a fraction of which the numerator is the quarters of service covered by IPERS between October 20, 198[4][1] and October 16, 1995, and the denominator is [Thomas's] total quarters of service covered by IPERS.

In 2019, Thomas filed an application to amend the QDRO. He claimed:

> Due to changes in the manner in which IPERS now calculates the benefits for members of the system, the present calculation set forth under the QDRO . . . will result in [Teresa] receiving a share of [Thomas's] IPERS benefit for a period of time when [Thomas] worked

---

[1] The order provided the year 1980, which appears to be a typo. The supposed typo is inconsequential, as Thomas did not begin IPERS-covered employment until 1987.

for IPERS covered employment while [Thomas] *will not* receive a similar share of those benefits.

The matter proceeded to hearing, at which the following evidence was presented. Thomas began his employment with Black Hawk County as a jail security officer on October 5, 1987. He served in that position for just under three years, and he was promoted to deputy sheriff on September 23, 1990. He has worked in that capacity since. A few years back, Thomas learned that once he accumulated twenty-two years of service as a deputy sheriff, his three years of service as a jailer would not count as years of service for the purpose of calculating his retirement benefits. Thomas also learned that IPERS interpreted the rules to allow Teresa to receive benefits for the three years of jailer service. IPERS explained to Thomas that Teresa would be entitled to her share of benefits accruing during the marriage. Thomas testified to his position for amending the QDRO: "[I]f I'm not getting credit for this time, I don't feel that she should get credit for that time." He was seeking "equality." He generally requested that the service factor for the calculation of Teresa's benefits be reduced to not account for the quarters Thomas would not be entitled to. Ultimately, the court denied the application to amend the QDRO and Thomas's subsequent motion to reconsider, enlarge, or amend. Thomas appeals.

Thomas requested the court to amend the QDRO to reflect the intent of the decretal court in light of a change in the law concerning calculation of IPERS benefits. Our analysis turns on the intent of the decretal court. *See In re Marriage of Heath-Clark*, No. 15-0525, 2016 WL 2753779, at *4 (Iowa Ct. App. May 11, 2016). The QDRO awarded Teresa fifty percent of benefits payable upon

distribution, multiplied by the service factor. The decretal court identified the service factor to be the quarters of covered service between October 20, 1984 (when Thomas began covered employment) and October 16, 1995 (when the parties separated), divided by the total quarters of covered service.

On appeal, Thomas argues the decretal court's intent would be served by reducing the service factor to reflect when benefits accumulated for Thomas as a member, which ultimately would not include his three years as a jailer. But a QDRO "is used to value and divide the portion of the defined benefit accrued during the parties' marriage." *Id.* at *6 (quoting *In re Marriage of Benson* 545 N.W.2d 252, 255 (Iowa 1996)). Thomas agrees the decretal court's "intention was to provide [Teresa] with half of [Thomas's] IPERS benefits that accumulated between the time the parties were married and the time they separated." Thomas asks that the numerator of the service factor be reduced to not account for the three years he was a jailer. But we find what happened after the dissolution of the marriage to be irrelevant. "[T]he numerator [is] the number of years during the marriage [the employee] accrued benefits under the pension plan . . . ." *In re Marriage of Smith*, No. 16-0597, 2017 WL 362000, at *5 (Iowa Ct. App. Jan. 25, 2017) (alterations in original) (quoting *Benson*, 545 N.W.2d at 255). The fact that the three years of service were later lost to Thomas does not change what accumulated as a result of the parties' joint marital efforts prior to their separation. While the three years as a jailer will not provide added value for Thomas at the end of the day, they provided added value during the marriage. Further, it appears the reason the three years were lost is because he earned greater benefits in his new employment classification; but Teresa should not lose benefits because of his increase in

benefits. The decretal court's intent was that Teresa be entitled to benefits accumulated during the marriage. The district court's denial of Thomas's modification application was in accordance with that intent, so we affirm.[2]

**AFFIRMED.**

---

[2] We are not presented with, and therefore render no direction or opinion on, any future IPERS administrative action.