# IN THE COURT OF APPEALS OF IOWA

No. 25-0324
Filed September 17, 2025

IN RE THE MARRIAGE OF ROZANNE MARIE BIRD
AND JAMES ROY BIRD

Upon the Petition of
ROZANNE MARIE BIRD,
        Petitioner-Appellee,

And Concerning
JAMES ROY BIRD,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Wright County,
Gregg R. Rosenbladt, Judge.


        A former spouse appeals from a decree of dissolution of marriage,
challenging the division of three accounts.  **AFFIRMED.**


        Brian W. Foddrill of Unbundled Legal Services of Iowa, Clear Lake, for
appellant.

        James A. Wetterling, Garner, for appellee.


        Considered without oral argument by Schumacher, P.J., and Badding and
Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

James Bird appeals from the division of assets in a decree of dissolution of marriage. On appeal, he challenges the district court's division and award of three accounts. Upon our review, we affirm.

I.      **Background Facts and Proceedings**

Following a twenty-six-year marriage to Rozanne, James appeals the portion of the district court's dissolution decree as to the division of three accounts. At the time of trial, James was sixty-two years old and Rozanne was seventy-two years old. This was a second marriage for both parties. Although retired at the time of trial, James had been employed at Eaton Manufacturing since 1983. Rozanne was running a consignment business with her adult daughter.

The day before trial, the parties reached a partial settlement agreement, which the court adopted. At trial, the parties submitted the remaining contested issues for resolution by the court; only the parties testified. The disputed issues involved the division of real estate, the value and award of appliances removed from a piece of property, financial accounts and investments, unsecured debts, and trial attorney fees. But on appeal, James challenges only the division of three accounts, specifically the Eaton Fund, which is a 401(k) from James's previous employer, the Thrivent Mutual Fund IRA (Thrivent Fund), which is a traditional IRA account funded with a lump sum payment from James's pension, and Rozanne's IPERS.[1]

---

[1]There is limited information about Rozanne's IPERS account in the record. Rozanne testified that rather than a lump sum, she elected a monthly payment, wherein she receives $230.03 per month.

At the time of trial, the value of the Eaton Fund was $137,061.28, and the value of the Thrivent Pension Fund was $377,290.76.[2] Neither party provided the value of either fund on the date of James and Rozanne's marriage. But four years prior to his marriage to Rozanne, James listed the valuation for Eaton Stock on his financial affidavit in the dissolution proceedings from his first wife as $1500 and the valuation of the Eaton pension at $400.[3] Through testimony at the dissolution trial, the parties stipulated that James's Eaton stock was worth approximately $22,000 at the time of this marriage, although there was no documentation to evidence the same.[4] Neither party provided the district court with a valuation for Rozanne's IPERS. As noted, Rozanne testified she receives income of $230.03 per month from her IPERS.

At trial, James requested that the premarital portion of both the Thrivent Fund and Eaton Fund be excluded from the marital estate, with forty-six percent designated as premarital and fifty-four percent designated as marital. He reasserts that argument on appeal and also argues that the district court erroneously excluded Rozanne's IPERS from the marital estate. At trial, Rozanne proposed a nearly equal division of the values of the Eaton Fund and Thrivent Fund, with James receiving $137,061.28 of the Eaton Fund and $122,290.67 of the Thrivent

---

[2] The Thrivent Fund was established by James when he was sixty years old to collect his pension from his employer in a lump sum. The lump sum was placed in a traditional IRA.

[3] These numbers are reflected on James's financial affidavit from his first dissolution proceeding. But James testified the "pension plan really had no value" until he reached the vested age of sixty.

[4] Counsel calculated this value by using the number from James's financial affidavit from his first marriage and adding $270 per month for fifty-seven months at an eight-percent interest rate.

fund, and Rozanne receiving $255,000 of the Thrivent Fund. Rozanne requested that she be awarded her IPERS.

The district court adopted Rozanne's proposal concerning the three accounts. This division resulted in James receiving $4000 more of the Eaton Fund and Thrivent Fund than Rozanne. The district court awarded Rozanne her IPERS account. The account division, along with the other property, resulted in assets of approximately $441,000 being awarded to both James and Rozanne. James appeals.

## II.    Standard of Review

We review a decree's division of property de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). When dissolving a marriage, courts "shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5) (2023). We will only disturb a decree's division when it fails to do equity, and what is equitable "depends upon the circumstances of each case," as guided by the factors in Iowa Code section 598.21(5). *Hansen*, 733 N.W.2d at 702. And "[a]n equitable division is not necessarily an equal division." *Id.*

## III.    Analysis

James asserts that the court should have offset each party's marital portions of the accounts and then divided the remainder of the accounts according to the *Benson* formula.[5] The *Benson* formula was not discussed at trial; James's first mention of the same came in his post-trial briefing. And the district court decree

---

[5] *See In re Marriage of Benson*, 545 N.W.2d 252, 254–57 (Iowa 1996).

did not discuss the application of the *Benson* formula. Rozanne does not contest error preservation. On these facts, we assume without deciding that James preserved the *Benson*-formula claim for appeal.

On appeal, James asserts that "about one-half of the contributions to all three accounts had been made prior to the parties' marriage." James requests that the accounts be designated forty-six percent premarital and fifty-four percent marital and that the premarital portion of the Eaton Fund and Thrivent Fund be set off to him prior to division of the percentage to be included in the marital estate.

This argument presents some hurdles for James. First, his argument assumes that premarital property is not divisible as part of the marital estate. And second, both the Eaton Fund and Thrivent Pension Fund's present values were known. The record does not reflect that any further contributions were being made to either fund. There was not a future benefit that was required to be calculated under the *Benson* formula. Third, there was no testimony from an actuary or other expert as to how the *Benson* formula would be applied to the accounts.

Because the current values of the Eaton Fund and Thrivent Fund were known, such expert was not necessary. But to propose that an account be divided under such formula requires some expert evidence. The valuation of a pension is complicated (especially when the plan is unvested) and requires the services of an actuary. *See Benson*, 545 N.W.2d at 255. And we note that our courts typically apply the *Benson* formula only for defined-benefit plans (like FERS and IPERS pensions). *See id.* at 256 n.1 ("[I]t may be more appropriate to divide and distribute defined contribution plans under the present-value method."). And fourth, James's proposed values and distribution are not borne out by the record.

Removing the *Benson*-calculation argument, we interpret James's argument to be a request to award the premarital portion of his accounts to him. So we begin with the proposition that Iowa is an equitable distribution state. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). "[C]ourts divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties." *Id.* All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property. *Id.* (citing Iowa Code § 598.21(1)).

Importantly, "the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *Id.* Property brought into the marriage by a party is merely a factor to consider by the court, together with all other factors to determine an equitable distribution of property at the end of the marriage. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). In dividing the Eaton Fund and Thrivent Fund, the district court determined:

> The Court finds and concludes that the Thrivent account is part of the divisible marital estate subject to equitable distribution. It is important that this account is vested and has matured. It was converted at the time of [James]'s retirement from a monthly pension benefit to a lump sum and it was invested with Thrivent. The Court has previously endorsed the idea of not dividing the two retirement accounts, and will divide the Thrivent account to equalize the property distribution. The Court finds that the balance of the Thrivent account is $377,290.67. Of this, if [James] is awarded $122,290.67 and [Rozanne] is awarded $255,000, the retirement funds of the respondent which the Court considers marital property, results in [James] receiving slightly more than the petitioner. Along with the distribution of other marital property, approximately $441,000 is allotted to both [Rozanne] and [James].

The Court also notes and finds and concludes that this is a long-term marriage and that neither party had significant premarital assets at the time of the marriage.

We determine that the district court properly considered both accounts as part of the marital estate, subject to division between James and Rozanne. We find nothing inequitable about the district court's decision to utilize the present-value method. *See In re Marriage Sigwalt*, No. 13-0877, 2014 WL 2341995, at *6 (Iowa Ct. App. May 29, 2014) (coming to a similar conclusion). And we affirm the division of the two funds given the length of the marriage and totality of property division.

Lastly, James argues that the court erred by excluding Rozanne's retirement account from the marital estate. But we are unable to find such exclusion in the record, and James does not point to any provision in the decree to demonstrate that the district court exempted Rozanne's IPERS from the marital estate. Rather, the district court awarded Rozanne her IPERS account as part of the divisible marital estate, citing to the party's respective incomes, finding, "Given the parties' respective retirement incomes, the Court finds and concludes that [Rozanne] should keep her relatively small IPERS retirement which amounts to $230.03 per month."[6] Without actuarial evidence, the district court could not have divided the IPERS plan based on the present value of Rozanne's future benefits. *See In re Marriage of Johnston*, 492 N.W.2d at 208.

---

[6] Under the income listed in the financial affidavits filed by the parties and the division of income producing assets, James will have a monthly income of $2617 and Rozanne will have a monthly income of $2210.85, resulting in Rozanne receiving approximately $400 less per month than James.

On our de novo review and given Rozanne's prior election for a monthly annuity rather than a lump sum, we decline to divide the IPERS account using the percentage method normally applicable to cases involving IPERS. *See In re Marriage of Scheppele,* 524 N.W.2d 678, 680 (Iowa Ct. App. 1994) (modifying decree, where present value of IPERS account was not ascertainable on the record, to order a QDRO using the percentage method to divide the future benefits when received).

Given that neither party provided the district court with a valuation for this account, that the only number ascertainable for the IPERS was Rozanne's modest monthly payment, and the division of the other assets and respective incomes of the parties, we conclude the district court's award of the IPERS account to Rozanne was equitable.

## IV.	Conclusion

We conclude the district court's division and award of the challenged accounts was equitable. We affirm the division of the Thrivent Fund and the Eaton Fund between the parties. And we affirm the award of the IPERS account to Rozanne.

**AFFIRMED.**