**IN THE COURT OF APPEALS OF IOWA**

No. 13-1310
Filed October 1, 2014


**IN RE THE MARRIAGE OF DAVID PAUL WALKER
AND JEANETTE RENEE WALKER**

**Upon the Petition of
DAVID PAUL WALKER,**
    Petitioner-Appellant,

**And Concerning
JEANETTE RENEE WALKER,**
    Respondent-Appellee.
_____


Appeal from the Iowa District Court for Wright County, Rustin T. Davenport, Judge.


David Paul Walker appeals from the property distribution and alimony provisions of the parties' dissolution decree. **AFFIRMED AS MODIFIED.**


Pamela J. Walker, Johnston, for appellant.

Vicki R. Copeland of Wilcox, Polking, Gerken, Schwarzkopf, Copeland & Williams, P.C., Jefferson, for appellee.


Heard by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

David Paul Walker appeals from the property distribution and alimony provisions of the parties' dissolution decree. He contends the division of property is based upon erroneous factual findings and is inequitable. He also objects to the award of alimony beyond his retirement. We affirm with minimal modifications, including a reduced cash equalization payment, amended debt allocation, and modification of language to eliminate any question of David's ability to modify alimony in the future.

**I. Background Facts and Proceedings.**

The following facts can be gleaned from the trial court testimony and exhibits. David and Jeanette Walker lived together about a year before they were married in August 2002. When they married, David was forty-nine years old, and Jeanette was thirty-nine years old. At the time of the trial, David was fifty-nine years old, and Jeanette was forty-nine years of age. They do not have children together.

David had purchased a house in October 1993 for $28,000, making a down payment of about $3000 and taking out a $25,200 mortgage. His payments were $228.27 per month, beginning November 1, 1993. David and Jeanette lived in this house while they were married and made improvements to it, including new roofing and air conditioning. The mortgage was paid in full in May 2008. In April 2009, the house had an assessed value of $52,800. The realtor who sold the house to David offered a letter valuation on July 30, 2012, estimating the house would sell for $36,000 to $42,000.

At the time the parties got married, David had a Vanguard 401k account. One hundred dollars from each of his twice-monthly paychecks from Union Pacific Railroad were placed in the Vanguard account. There was no evidence as to when David began making these contributions, or the amount of the account at the time David and Jeanette were married. David continued contributing to the account for two months ($400) after the couple was married and then contributed nothing further. In 2008, the Vanguard account had a value of $11,300. At trial, evidence indicates the account had a value of $19,812.39.

During the marriage, David purchased a collectible 1970 Chevrolet Nova for $13,100. An additional $8000 to $10,000 was spent on the vehicle. In March 2012, the parties had the Nova insured for $20,000. According to David, the Nova is now in need of some significant motor repairs.

At the time the parties married in 2002, Jeanette was employed cleaning houses full-time for fifteen dollars per hour. She had obtained her GED in 1981. In 2006 or 2007, Jeanette was employed by Express Shuttle transporting railroad employees, working full time and making between nine and ten dollars per hour. Jeanette, however, has degenerative disc disease, bulging disc disease, and spurring on her vertebrae. She has had two back surgeries. Jeanette is now permanently disabled. She is not to lift more than five pounds, vacuum, or climb stairs. She can stand for no more than fifteen minutes. If in a car, Jeanette must take a half-hour break after two hours. Jeanette became eligible to receive Social Security disability benefits beginning in May 2009, though the date of disability was found to be December 1, 2008. A letter from the Social Security Administration states Jeanette was entitled to past-due social security benefits

for May 2009 through March 2011 in the amount of $11,684. At trial, Jeanette testified she received that lump sum benefit payment, which went into the parties' joint account and was spent. Her income is currently limited to the $526 per month she receives in disability benefits.

In March 2009, Jeanette was a passenger in a vehicle driven by her sister when they were struck from behind. The driver of the vehicle that hit Jeanette was to pay for her medical bills. After the parties separated in April 2012, Jeanette received a $7000 settlement for pain and suffering related to the accident, of which her attorney received one-third.

At the time David and Jeanette separated, David had been employed by the Union Pacific Railroad as a machine operator for more than thirty years. At the time of the dissolution trial in February 2013, David was earning twenty-six dollars per hour and received non-taxable per diem and expense payments for required travel.[1] In 2012, the nontaxable payments exceeded $26,000.[2] David testified these amounts were "expense reimbursement," but did not state whether they were for actual or allowed expense amounts. There was no testimony as to his actual expenses related to his employment but his amended financial affidavit reflects monthly expenses for meals in the sum of $1000 and for motels in the sum of $1200. David's 2012 W-2 statement indicated his taxable wages were $62,226.78.

David lived with his daughter temporarily when he left the marital home and then moved with his girlfriend into an apartment, which he furnished for

---

[1] The nontaxable allowance and per diem amounts varied per pay check.
[2] The nontaxable income averaged $2245 per month.

about $5000. His rent is $450 per month. When David left the marital home at the time of separation, he took the two vehicles—the Nova and a 2008 Chevrolet HHR truck—both of which were titled in his name. On August 27, 2012, David purchased a 2008 Equinox for $16,250. David did deliver to Jeanette the HHR,[3] but at the time it had a broken driver-door handle, no power steering, and the wheel bearings "were completely shot." (Jeanette was advised by a mechanic not to drive the vehicle out of town.) After the separation, David was making double payments on the Nova and HHR debts, which he paid off by September 2012.

In October 2012, Jeanette received her first temporary support check from David. Prior to receiving that support check, her telephone, cable, and internet services were discontinued for lack of payment. In order to provide for living expenses, Jeanette used the settlement proceeds from the 2009 car accident (about $4666), borrowed $3000 from a friend, pawned jewelry ($550), and sold a boat and trailer ($500). In November 2012, Jeanette received a medical bill in excess of $5500 from Wright Medical Center for services rendered in August through October 2010.

At the dissolution trial, the issues presented were the distribution of property, allocation of debts, and Jeanette's request for alimony. David did not

---

[3] A September 2012 order for temporary allowances stated David "is paying most of the ongoing marital expenses" and ordered him to pay temporary spousal support of $1000 per month beginning October 1, 2012. An October 25, 2012 amended order for temporary allowances clarified that David was to continue paying for the natural gas, electricity, and water provided to the marital residence. He was also to continue to pay for sewer and garbage service, the license and registration fees and the premium for auto insurance on the vehicle driven by Jeanette, the real estate taxes and the insurance on the residence, and he was to provide health insurance coverage for Jeanette. In addition, temporary support was raised to $1150.

believe Jeanette was entitled to any amount of the Vanguard account because he had contributed to it prior to the marriage. Nor did he think she should get any part of his pension.[4] He asked that he be awarded the marital residence, which he valued at $36,000, and his coin collection (unknown value). He was willing to sell the Nova and split the proceeds, claiming the vehicle was then worth between $3500 and $5000. David testified he could not continue to afford to pay $1150 per month in support, and if ordered to do so, it should not extend past the time he intended to retire at the age of sixty-two and one-half years.

The district court entered a dissolution decree on July 18, 2013. The court awarded the house to David, finding the value of the house to be $39,000, of which $14,400 should be considered a joint marital asset. The court valued the Nova at $17,500 and awarded it to David.[5] The court also awarded David the Equinox with a value that equaled the debt owed on it. David was assigned a life insurance policy with a cash value of $2220.39. David received some household items and the coins. The court rejected David's claim to one-half the proceeds from Jeanette's sale of the boat and trailer, finding her "use of the proceeds to pay her expenses was not unreasonable, and the court will not make any adjustment to the parties' property division as a result." The court also rejected the claim that Jeanette's pawning of jewelry resulted in a dissipation of assets,

---

[4] David testified he had Tier I and Tier II retirement benefits through the railroad. Tier I benefits are in lieu of social security payments and are not divisible. Tier II benefits begin at David's retirement and are subject to division by the formula enunciated in *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996).

[5] The district court found David's testimony that the vehicle had declined in value to $5000 despite having it insured for $20,000 "is not credible."

specifically finding "Jeanette's testimony regarding what she had to do to make living expenses is credible."

The court ruled, "Given that most of the marital property has been awarded to David, the court finds that he should be responsible for those debts listed in [Jeanette's] financial affidavit [$10,321.96]." The court found the Vanguard account to be a marital asset and assigned it to David.[6] The court entered a Qualified Domestic Relations Order with respect to David's Tier II benefits. David was also ordered to pay $2150 of Jeanette's attorney's fees. Finally, David was ordered to pay Jeanette an equalization payment of $20,000.

The court awarded the HHR vehicle to Jeanette and valued it at $2500. She was also awarded one-half of parties' 2012 income tax refund. The court considered the pertinent statutory factors with respect to Jeanette's request for spousal support. The court found,

> It is likely that both parties have overstated their expenses. David's expenses include monthly debt payments, while Jeanette does not include those amounts. While David has to spend substantial time on the road which increases his expenses, some of his listed expenses appear excessive. Furthermore, he will now be able to stop paying expenses for two homes which will decrease his expenses.
> A marriage of less than 11 years is less likely to result in an award of permanent alimony. However, when the parties married in 2002, Jeanette was not disabled. She leaves the marriage disabled and with little earning capacity. Accordingly, the court finds that an award of alimony is appropriate.
> Jeanette's economic needs will be greatest in the next few months while she finds a new home and re-establishes her life.

---

[6] The court mistakenly found David "started making payments to this account two months before the parties were married." David, however, testified he made payments *for only two months after* the marriage. The district court concluded, "Despite David's position, the court finds this to be a marital asset. Even if a portion of David's contribution occurred prior to marriage, the court can still include the entire amount as marital property, Iowa Code § 598.21(1)(b)."

However, she will receive David's equalization property payment which will assist her during that time.

The court awarded Jeanette permanent spousal support of $1500 per month. When she begins to receive a portion of David's Tier II retirement benefits, spousal support would reduce to $1000 per month, which was to continue until the death of either party or Jeanette's remarriage.

On appeal David challenges the property distribution, the debt allocation, and the award of alimony.

**II. Scope and Standard of Review.**

We review dissolution cases de novo. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995).

We afford the trial court considerable latitude in determining spousal support awards. *See Benson*, 545 N.W.2d at 257. We will disturb the district court's ruling only where there has been a failure to do equity. *Id.*

**III. Discussion.**

*A. Property distribution.* David contends the property distribution was inequitable. We examine the entire record and adjudicate anew the issue of property distribution. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We will disturb the district court's ruling only when there has been a failure to do equity. *Id.*

*1. Vanguard Account.* David first argues the trial court should have awarded the entire Vanguard account to him. In his reply brief he clarifies his request that the account not be considered a marital asset.

In the dissolution decree, the district court is to divide the property of the parties equitably. Iowa Code § 598.21(5) (2013) (listing factors the court is to consider when dividing the assets and debts of the parties). What is equitable depends upon the unique circumstances of each case. *Sullins*, 715 N.W.2d at 247. Though equality is most often equitable, it is not required. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998).

"Under our statutory distribution scheme, the first task in dividing property is to determine the property subject to division." *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007). Iowa Code section 598.21(5) requires "all property, except inherited property or gifts received [or expected] by one party," to be equitably divided between the parties.

> We have previously held this broad declaration means the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party. The district court may not separate a premarital asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage. Instead, "property brought to the marriage" by each party is merely one factor among many to be considered under section 598.21. Other factors include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, and any other factor the court may determine to be relevant to any given case.

*Fennelly*, 737 N.W.2d at 102 (citations, quotation marks, and alterations omitted).

However, "[p]remarital property does not merge with and become marital property simply by virtue of the marriage." *In re Marriage of Wendell*, 581 N.W.2d 197, 199 (Iowa Ct. App. 1998). Our court has stated, "If a marriage lasts only a short time, the claim of either party to the property owned by the other prior to the marriage or acquired by gift or inheritance during the brief duration of the marriage is minimal at best." *In re Marriage of Hass*, 538 N.W.2d 889, 892 (Iowa Ct. App. 1995) (finding division equitable in three-year marriage where there was a "vast difference" in assets brought to the marriage); *see In re Marriage of Steenhoek*, 305 N.W.2d 448, 453 (Iowa 1981) (upholding division of property in five-year marriage where former spouse received credit for purchase price of real property, which funds he brought to the marriage); *see also In re Marriage of Wallace*, 315 N.W.2d 827, 830-31 (Iowa Ct. App. 1981), and cases cited therein regarding marriages of brief duration. On the other hand, in a marriage of long duration, an award of spousal support and a substantially equal property division may be appropriate, especially where there is a great disparity in earning capacity. *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993) (nineteen-year marriage); *see also Fennelly*, 737 N.W.2d at 103-04 (fifteen-year marriage).

The district court found the Vanguard account to be a marital asset, refused to divide the Vanguard account, and awarded it to David. David argues this decision was based upon the court's erroneous factual finding that most of the contributions to the Vanguard account occurred during the marriage. We acknowledge this erroneous finding as David's testimony was that only $400 was contributed to the account during the marriage. Yet, "all property, except

inherited property or gifts received [or expected] by one party," is subject to division under Iowa Code section 598.21(5). Because property brought into the marriage is only one factor among many considered under section 598.21(5), we conclude the parties' ten-year marriage is not such a short time that David is entitled to full credit to preclude the court from considering a division of the Vanguard account. *See McDermott*, 827 N.W.2d at 678 ("The district court may assign varying weight to premarital property, but should not automatically award it to the spouse who owned the property prior to the marriage.").

*2. Chevrolet Nova.* David complains the district court erred in finding the value of the Nova to be $17,500. But we—like the trial court—find David's claims of the sharply diminished value of the Nova not credible and decline to make modifications to the award on this ground. The district court's value was within the permissible range of the evidence. *See In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) ("Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence.").

*3. Accident Settlement.* David also argues we should include Jeanette's $7000 settlement from the accident as a marital asset for purposes of determining an appropriate equalization payment. A personal injury settlement is a marital asset to be divided as the circumstances of the case require. *See In re Marriage of McNerney*, 417 N.W.2d 205, 208 (Iowa 1987) ("Insofar as the [personal injury] award is intended to replace pain and suffering it represents personal property of the injured spouse and is not subject to equitable distribution."). Although the evidence here does not identify what portion of the settlement was for pain and suffering, the evidence reflects that the monies were

used on marital obligations, Jeanette's living expenses, and we decline to award David a portion of the settlement.

4. *Debts.* David argues the district court erred in requiring him to pay Jeanette's debts as listed on her financial affidavit. Specifically, he contends (1) the debt to Wright Medical Center in the amount of $5519.50 is an expense that arose out of the 2009 automobile accident that should have been covered by the other party or paid out of Jeanette's settlement check,[7] (2) additional medical expenses listed are not accompanied by information as to why the expenses occurred, (3) her claims she had to borrow money before receiving temporary support due to an inability to pay for living expenses should be rejected because she had "ample amounts of funds to meet her living expenses";[8] (4) the amount owed to the pawn shop is not a "debt"; and (5) he should not be required to pay for cable and internet services because they are not necessities.

We will address some of these complaints, but we dismiss without further discussion David's contentions concerning the Mediacom debt (item 5 above) and the medical expenses other than Wright Medical Center (item 2) because we find no reason to disturb the district court's rulings as to those debts. However, we note the Mediacom debt was paid by Jeanette prior to the trial so, in essence, David shall reimburse her for the sum paid. The Mid-American utility bill should

---

[7] David argues Jeanette's $7000 settlement for the automobile accident included the payment of her medical expenses. However, Jeanette testified the person who hit her was to be responsible for medical expenses, and the $7000 settlement was for pain and suffering.

[8] This argument assumes Jeanette was receiving the ordered temporary support, which the record clearly establishes was not paid until October 1, 2012. The parties separated in April, six months before Jeanette received the first payment of $1150. In the meantime, Jeanette's telephone, cable, and internet were shut off. Electricity and water services threatened termination before David paid those bills. Jeanette had no reliable transportation.

have also been excluded from the total sum to be paid by David because he paid it prior to trial.

With respect to the debt owed to Dave Govern listed in the amount of $3000, Jeanette testified she borrowed money from this friend to assist with living expenses as David's payments of temporary support were not timely paid. She also testified that debt had been reduced to $2400 because she had paid him $600 when she received a support check. We note that at the time of trial, Jeanette had received all temporary support. To require David to pay this debt essentially increases his temporary support obligation as the monies from Dave Govern were used by Jeanette to pay for her living expenditures pending the dissolution action. Although David could be responsible for any interest on this loan as it was incurred due to his untimely payments, there was no evidence that Jeanette incurred any interest on the loan. Accordingly, David shall not be obligated to reimburse Jeanette for this debt.

We agree that David need not pay the pawn shop "debt" listed at $790. This amount indicates the cost to redeem the jewelry items Jeanette pawned, which Jeanette testified was no longer possible. Accepting this testimony, Jeanette received money for the items pawned and cannot retrieve the actual items, so no "debt" is owed.

With respect to the $5519.50 that Wright Medical Center is claiming is owed by Jeanette, the trial court ordered David to pay this amount, finding spouses are liable for the medical expenses of the other. *See* Iowa Code § 597.14 ("The reasonable and necessary expenses of the family . . . are chargeable upon the property of both husband and wife, or either of them, and in

relation thereto they may be sued jointly or separately."); *St. Luke's Med. Ctr. v. Rosengartner*, 231 N.W.2d 601, 602 (Iowa 1975) (finding medical and hospital expenses constitute "expenses of the family"). David argues that Jeanette testified neither she nor David should be responsible for this charge.

We agree to the extent this debt is owed by one of the parties, David should pay it. If a third party or insurance is available to pay the obligation, David shall be relieved of the obligation. Jeanette shall make reasonable efforts to assist David to ascertain the status of the debt and whether an alternate payer exists. Based upon all the foregoing, we modify the decree to the extent that David shall pay Jeanette's debts in the sum of $5926.82 subject to her obligation to determine if an alternate payer exists to pay Wright Medical Center.

*5. Cash Equalization Payment.* As we have noted, the district court awarded David the marital home but found $14,400 of its value was to be considered a marital asset.[9] While we might quibble with the district court's valuation of the house or the value that should be considered a marital asset,[10] we will view it together with the court's ruling with respect to the Vanguard account and all other assets distributed and debts allocated. *See In re Marriage of Scheppele*, 524 N.W.2d 678, 679 (Iowa Ct. App. 1994) (noting we view all economic aspects of decree as an integrated whole).

David will leave the marriage with the only assets of value, an ample income with considerable nontaxable allowances, and significant pension

---

[9] We observe that the payments made on the house during the marriage exceeded $15,700 and the couple spent several thousand dollars either maintaining or upgrading the house.

[10] *See McDermott*, 827 N.W.2d at 679 (noting we do not disturb the district court's valuation of an asset where it is within the permissible range of evidence).

benefits. On the other hand, Jeanette is permanently disabled, has little if any earning capacity, has several years before she is eligible for further age-based benefits, and has an income presently limited to disability payments of $526 per month. But it would be unjust to disregard David's premarital assets, the debt allocated to him, and his alimony obligation. Under these circumstances, we modify the cash settlement to require David to pay $16,000 upon the same payment terms provided by the district court.

**B. Spousal support.** In awarding Jeanette permanent spousal support, the trial court stated,

> A marriage of less than 11 years is less likely to result in an award of permanent alimony. However, when the parties married in 2002, Jeanette was not disabled. She leaves the marriage disabled and with little earning capacity. Accordingly, the court finds that an award of alimony is appropriate.
> Jeanette's economic needs will be greatest in the next few months while she finds a new home and re-establishes her life. However, she will receive David's equalization property payment which will assist her during that time. An award of rehabilitative alimony does not appear to be appropriate because it is doubtful that any period of education or re-training will be possible given her disability.
> Given the parties' circumstances, an award of traditional alimony appears to be necessary to do equity between the parties. The present amount ordered for temporary alimony [$1150] shall continue for August and September, 2013. The court finds that, with the reduction in payments for two homes, David will be able to increase the amount of alimony to $1500 per month. He shall begin this monthly payment October 1, 2013. One-half shall be paid the 1st of each month and one-half shall be paid on or before the 15th of each month. Payments shall be made through the Wright County Clerk of Court. Payments shall continue until David reaches age 63 or until he retires from the railroad, whichever is later. Upon his retirement, Jeanette will receive part of David's railroad retirement benefit, at which time alimony shall be reduced to $1,000. Once he is age 63, David cannot reduce his alimony until after Jeanette receives her first payment from his railroad pension. Alimony shall continue until the death of either party or until Jeanette's remarriage.

Spousal support is a stipend paid to a former spouse in lieu of the legal obligation to provide financial assistance. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). "Whether spousal support is justified is dependent on the facts of each case." *In re Marriage of Hazen*, 778 N.W.2d 55, 61 (Iowa Ct. App. 2009). "Even though our review is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *Benson*, 545 N.W.2d at 257. We consider property division and spousal support together in evaluating their individual sufficiency. *In re Marriage of McLaughlin*, 526 N.W.2d 342, 345 (Iowa Ct. App. 1994).

Iowa recognizes three types of spousal support: traditional, rehabilitative, and reimbursement. *In re Marriage of Francis*, 442 N.W.2d 59, 63-64 (Iowa 1989). Traditional spousal support is awarded when the economically dependent spouse is incapable of self-support. *Id.* at 63; *see also In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008).

A party does not enjoy an absolute right to spousal support after dissolution of the marriage. *See* Iowa Code § 598.21A(1) (providing that "the court may grant an order requiring support payments to either party"). The award is discretionary, and should be based on the factors identified by the legislature. Those factors include, but are not limited to: (1) the length of the marriage; (2) the age and physical and emotional health of the parties; (3) the property distribution; (4) the education level of the parties at the time of the marriage and at the time the action commenced; (5) the earning capacity of the parties; and

(6) the feasibility of the party seeking support become self-supporting at a standard of living enjoyed during the marriage. Iowa Code § 598.21A(1).

The determination of the need for spousal support and the amount of any such support depends on the unique facts and circumstances of each case. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (stating precedent is of little value because the decision to award support and the determination of the amount of such support is based on the unique facts and circumstances of each case). A party is entitled to receive support only in an amount sufficient to maintain the standard of living previously enjoyed without destroying the other party's right to enjoy a comparable standard of living. *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983).

David complains he is not able to afford the ordered $1500 per month and that the award denies him the right to maintain his standard of living. The record belies this claim. Considering only his taxable earnings, David has earnings in excess of $5100 per month. In his amended affidavit of financial status, he claims expenses of $5091 per month, but this includes $1000 for meals and $1200 for motels. We assume these expenses (at least the motels and the majority of meals) are covered by his non-taxable expense reimbursement, which averages $2245 per month. He also claims a $289 per month expense for the Nova and HHR, but he testified those vehicles were paid off prior to trial. And as noted by the trial court, his expenses would decrease when he was responsible for only one household, rather than two.

In reviewing the record and the factors contained in section 598.21A, although the sum of $1500 is perhaps generous, David will only be obligated to

pay this sum until age sixty-three, or whenever he retires, whichever is later.[11] We acknowledge permanent alimony is typically awarded only in longer marriages; Jeanette's disability weighs heavily in our determination to affirm the alimony award.

We modify only to the extent that the spousal support payments may not be reduced "until Jeanette receives her first payment from his railroad pension." We believe the district court was simply setting the time when David's payments reduced in amount to $1000 and did not limit David's future ability to seek modification of the alimony, and we modify accordingly.

**IV. Appellate Attorney Fees.**

Jeanette requests an award of appellate attorney fees in the amount of $7500. Appellate attorney fees are not a matter of right, but rest in the court's discretion. *In re Marriage of Oakland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). In light of our minimal modifications of the decree, David's greater ability pay, and Jeanette's needs, we award Jeanette $1500 in appellate attorney fees.

Costs on appeal are assessed to David.

**AFFIRMED AS MODIFIED.**

---

[11] Under federal law, Jeanette also will be eligible to receive a monthly annuity based upon David's Tier I benefits when she turns sixty-two years of age, if she is not married at the time, as the marriage exceeded ten years—but it may affect her current disability payments. *See* 45 U.S.C.A. § 231c.