# IN THE COURT OF APPEALS OF IOWA

No. 19-0097
Filed August 19, 2020

IN RE THE MARRIAGE OF JODIE LYNN DICKEY
AND WILLIAM MARK DICKEY

Upon the Petition of
**JODIE LYNN DICKEY,**
        Petitioner-Appellee,

**And Concerning
WILLIAM MARK DICKEY,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Madison County, Thomas P. Murphy,

Judge.


        The husband in this dissolution of marriage proceeding appeals the property

division provisions of the district court's decree. **AFFIRMED AS MODIFIED AND

REMANDED**.


        G. Stephen Walters of Jordan, Oliver, Walters & Smith, P.C., Winterset, for

appellant.

        Andrea M. Flanagan of Flanagan Law Group, PLLC, Des Moines, for

appellee.


        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

Jodie and William Dickey married in 1996. They had two children, K.M.D. (born in 1997) and A.P.D. (born in 2002). The wife also has a daughter from a prior relationship, A.T., who is an independent adult. The parties reached a settlement with respect to all issues pertaining to the children but went to trial regarding property division, spousal support, and attorney fees.

The district court issued a ruling dividing the property of the parties, declining to award spousal support to either party, and declining to award attorney fees to either party. As part of the property division, the district court ordered the husband to transfer numerous shares of bank stock and portions of his 401(k) to the wife and also ordered the husband to pay a property division equalization payment to the wife.

The husband appeals. The wife does not cross-appeal, but she requests appellate attorney fees. The husband claims the district court erred by (1) including assets in the marital estate that were not owned by the parties, (2) ordering the transfer of numerous shares of bank stock, (3) ordering transfer of portions of his 401(k) rather than dividing the parties' respective retirement accounts using a percentage formula, and (4) ordering an excessive equalization payment. Finding the district court improperly included assets that no longer belonged to the parties in determining the property division and equalization payment calculation, we modify the district court's order as stated in this opinion.

## I.   Standard of Review.

Dissolution of marriage actions are reviewed de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the

entire record and adjudicate anew the issue of the property distribution." *Id.* While we give weight to the findings of the district court, particularly concerning the credibility of witnesses, we are not bound by them. *Id.* The district court's ruling will only be disturbed when the ruling fails to do equity. *Id.*

## II. Concessions of the Parties Regarding Premarital Assets.

Before discussing the details, we first highlight concessions made by the parties regarding premarital assets. "The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). Of course, the court's first task when it comes to property division is to identify and value all assets and debts subject to division. *See McDermott*, 827 N.W.2d at 678. "To identify divisible property, the district court looks for all marital assets that exist at the time of the divorce, with the exception of gifts and inheritances to one spouse. Premarital property may be included in the divisible estate." *Id.* While premarital property may be considered part of the marital estate, based on our review of the record and the briefs, we find the parties have conceded that any premarital assets and debts should be excluded from the marital estate with any appreciation of an asset during the marriage considered marital property. Based on these concessions when considered with the equities of this case, we find it equitable to generally set aside premarital assets and debts by not including them in the marital estate.

## III. Treatment of KAW, LLC.

KAW, LLC is a limited liability company that the husband organized in 2007. Upon creation of the LLC, 10,000 membership units were issued, with 3400 issued

to the husband and 3300 issued to each of the parties' two children (K.M.D. and A.P.D.). As explained in section VI.A.2 below, KAW owns three distinct assets, giving the LLC a total value of $304,803.

The district court "awarded all right title and interest in KAW" to the husband, apparently considering the entire value of the LLC—minus premarital value of the assets—as marital property. The husband argues the court erred in disregarding the interest held by the parties' children, and we agree. Treating the husband as the owner of all membership units would ignore the law of business associations, as an LLC is an entity distinct from its members. *See* Iowa Code § 489.104(1) (2018); *see also Hollingshead v. DC Misfits, LLC*, 937 N.W.2d 616, 620 (Iowa 2020) (McDonald, J., dissenting). The husband organized KAW in 2007, transferring the membership units—thirty-four percent to himself and thirty-three percent to each of the children—at the time of organization. The husband transferred the lion's share of assets to the LLC in 2008, long before either party was planning to divorce. Consequently, this is not a situation in which the husband dissipated marital assets to avoid division of them. *See In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013) (discussing the dissipation doctrine that applies when a spouse's conduct during the period of separation results in loss or disposal of property otherwise subject to division). We find no impropriety in this action, and we will not consider the children's sixty-six percent ownership interest in KAW as marital property. This change alone necessitates further modification of the property division, as discussed in section VI.

However, we recognize the husband—in his role as the member-manager of KAW—has shown confusion over what constitutes "his" property and what

constitutes jointly-owned property or other people's property. Thus, we find additional steps are necessary to protect the children's interests.

A.P.D., who owns thirty-three percent of the membership units, is still a minor and subject to the Iowa Uniform Transfers to Minors Act. *See* Iowa Code chapter 565B (2020). On remand, the district court shall issue appropriate orders appointing a chapter 565B custodian of A.P.D.'s membership units in KAW. The district court shall have the authority to remove the current custodian and shall determine an appropriate custodian, whether that is the husband, the wife, or some other person or entity, taking into account who will best protect the child's interests.

K.W.D., who owns the remaining thirty-three percent of membership units, is no longer a minor subject to chapter 565B. On remand, the district court shall also issue an order requiring the husband to take all steps needed to notify K.W.D. of her ownership of these membership units and to allow K.W.D. to have full control over them. Additionally, the district court shall have the authority to issue any orders necessary to effectuate these changes and prevent the husband from interfering with the children's ownership of or benefits from their membership units.

## IV. Transfer of F&M Bancorp Shares.

As explained below in section VI.A.1, the husband and wife at one time owned—individually or jointly with each other or their children—several hundred shares of F&M Bancorp (bank) stock. In the property division, the district court awarded "all right title and interest in 232 F&M Bancorp shares" to the wife. The husband asserts this is impossible as he does not own enough bank shares to effectuate this transfer, nor can he obtain enough bank shares. Additionally, it is not clear to us how the district court intended the parties to comply with its direction

that the wife receive the 232 bank shares. Resolving this uncertainty and the husband's argument is not necessary, as the property division in section VI replaces the district court's order that the wife receive 232 bank shares.

## V.      Treatment of Retirement Accounts.

The parties have separate 401(k) retirement accounts. Based on the present value of these accounts minus premarital value, the district court divided the accounts by ordering the husband to transfer $52,000 from his 401(k) to the wife via a qualified domestic relations order (QDRO).

Rather than use the present value, the husband asserts the accounts are most equitably divided using the percentage formula set forth in *In re Marriage of Benson*, 545 N.W.2d 252 (Iowa 1996).[1] We find use of the formula unnecessary in this case, as it involves a defined contribution plan with a known account balance and a known premarital value. In contrast, *Benson* involved a defined benefit plan, which is a type of plan that is much more difficult to value or equitably divide without using the formula set forth in that case. 545 N.W.2d at 257; *see also In re Marriage of Sullins*, 715 N.W.2d 242, 248 (Iowa 2006) ("[I]t is normally desirable to divide a

[1] *Benson* applied the following formula to divide pension benefits:
> A fraction is first computed, the numerator being the number of years during the marriage [the employee spouse] accrued benefits under the pension plan . . . and the denominator being the total number of years [the employee spouse's] benefits accrued prior to maturity (i.e., receipt of payments upon retirement). This fraction represents the percentage of [the employee spouse's] pension attributable to the parties' joint marital efforts. This figure is then multiplied by [the nonemployee spouse's] share of the marital assets (fifty percent). Finally this second figure is multiplied by [the employee spouse's] total accrued monthly benefit upon maturity (retirement) to calculate [the nonemployee spouse's] share.

545 N.W.2d at 255.

defined-benefit plan by using the percentage method."). We are not saying the *Benson* formula could not be used with a defined contribution plan. We simply find it unnecessary in this case. *See Benson*, 545 N.W.2d at 256 n.1 ("[I]t may be more appropriate to divide and distribute defined contribution plans under the present-value method."). While we reject the use of the percentage formula to divide the parties' 401(k) accounts, we modify the amount of the QDRO as part of the equitable division of property as explained in section VI below.

## VI. The Division of Marital Assets.

In light of the other modifications in this opinion, we find it necessary to also modify the division of marital property, including the equalization payment. In doing so, we are mindful of the parties' agreement to exclude premarital assets and debts from the marital estate.

### A. The Pesky Assets.

This case would present a fairly straight-forward division of assets and debts, but for two assets that have greatly complicated the analysis. Getting a handle on these assets is an important step in the analysis.

#### 1. F&M Bancorp Shares.

The first of these assets is the F&M Bancorp shares. The parties met while working for the same bank, and both bought shares of the bank before and during the marriage. The details of the shares are not tricky, but the record is confusing in trying to figure out how many shares there are and who owns them. Based on our review of the record, we find there are 1039 shares at issue originally owned as follows:

| Description of Shares | Husband | Wife | A.T. | K.M.D. | A.P.D. |
|---|---|---|---|---|---|
| Husband owned – premarital | 657 | | | | |
| Wife owned – premarital | | 70 | | | |
| Husband purchased | 10 | | | | |
| Wife purchased | | 64 | | | |
| Husband and wife jointly own | 50.5 | 50.5 | | | |
| Husband and A.T. jointly own | 5 | | 5 | | |
| Wife and A.T. jointly own | | 2 | 2 | | |
| Husband and K.M.D. jointly own | 27.5 | | | 27.5 | |
| Wife and K.M.D. jointly own | | 2 | | 2 | |
| Husband and A.P.D. jointly own | 30 | | | | 30 |
| Wife and A.P.D. jointly own | | 2 | | | 2 |
| Totals | 780 | 190.5 | 7 | 29.5 | 32 |
| **Grand Total = 1039 shares** | | | | | |

The value of the shares is not disputed. The parties agree each share was worth $73 per share at the time they got married and was worth $425 per share at the time of trial. The jointly-owned shares are undivided. So, for example, the shares jointly owned by the husband and A.T. involve a certificate for ten shares owned jointly by them (as opposed to each owning five shares as depicted in the table). This does not create complexity for valuation, but it does for division, especially with non-parties.

The other complicating factor is that the husband transferred the 657 shares he owned before the marriage and the ten shares he purchased in his name during the marriage to KAW in 2008. This leads us to a discussion of the next complicating asset.

**2.    KAW.**

As noted above, KAW has 10,000 membership units. The husband owns 3400 of these membership units and the parties' two children (K.M.D. and A.P.D.) each own 3300 membership units. The LLC owns three assets: (1) a parcel of real

estate (located on 4th Avenue); (2) 667 shares of bank stock (transferred to the LLC by the husband as previously noted); and (3) a checking account. We find the real estate has a value of $105,200, with a mortgage on the real estate of $84,374,[2] leaving equity in the real estate of $20,826. The 667 shares of bank stock are worth $283,475,[3] but $47,961 of that amount was owned by the husband before the marriage.[4] The checking account is worth $502. So, the value of KAW is $304,803. With 10,000 outstanding membership units, each unit is worth $30.48.

As noted, $47,961 of KAW's value consists of the premarital portion of some of the bank shares the husband infused into the LLC. This premarital portion of the LLC's value is the equivalent of 1574 membership units.[5] There was no evidence suggesting distribution of the membership units of the LLC between the husband, K.M.D., and A.P.D. did not include a pro rata distribution of the premarital value of the membership units. Therefore, as the husband has a thirty-four percent ownership interest in the LLC, thirty-four percent of those 1574 units, or 535 units, should be set aside to the husband as premarital assets not subject to division as part of the marital estate, pursuant to the concession of the parties. The remaining

---

[2] This figure was calculated from information contained in the husband's affidavit of financial status. In that affidavit, the husband lists a mortgage on the KAW real estate of $28,687, which represents his 34% share of that debt. This figure equates to a total mortgage amount of $84,374 ($28,687 ÷ .34 = $84,373.53).

[3] The shares were worth $425 per share at the time of trial (667 shares x $425 per share = $283,475).

[4] The husband owned 657 shares of the stock when the parties married. The stock was worth $73 per share at that time (657 shares x $73 per share = $47,961).

[5] $47,961 divided by $30.48 per unit equals 1573.52 units.

2865 membership units issued to the husband shall be considered part of the marital estate, valued at $87,325.[6]

## B. Property Division and Equalization Payment.

Having explained the background of the complicated assets, we now turn to dividing them and the other assets and debts of the parties. Based on the evidence, concessions made in the parties' testimony, concessions made in the parties' briefs, and the findings made by the district court, including credibility determinations, on our de novo review we determine the parties had the following assets and debts that need to be equitably divided. The value listed for each asset or debt is the value we have determined for each based on our de novo review of the record. If a value of an asset is listed in one party's column, then that party is awarded that asset. Likewise, if a value of a debt is listed in one party's column, then that party is solely responsible for that debt. Adjustments for premarital assets and debts will be made at the bottom of the table. Any clarification pertaining to a particular asset or debt will be made by footnote:

| Description of Asset or Debt | Wife | Husband |
|---|---|---|
| 1999 Ford F-150 | | $ 750 |
| 2004 Ford Taurus | | 1000 |
| 2016 Ford Focus | $ 8400 | |
| 2016 Ford Focus debt | (8400) | |
| 2003 Ford Focus | 1000 | |
| 2004 Chevrolet Cavalier | 1000 | |
| Court Avenue real estate | | 84,600 |
| Court Ave. real estate debt | | (13,372) |
| Filmore Street real estate | 58,000 | |
| Filmore St. real estate debt | (19,000) | |
| County Hwy D20 real estate | | 111,530 |
| County Hwy D20 real estate debt | | (31,566) |
| Vernon Drive real estate | | 83,740 |

---

[6] 2865 units x $30.48 per unit = $87,325.20.

| | | |
|---|---:|---:|
| Vernon Drive real estate debt | | (65,531) |
| Greenfield real estate | 35,700 | |
| KAW, LLC[7] | | 87,325 |
| Bank shares (101 owned by husband and wife)[8] | 42,925 | |
| Bank shares (70 wife's premarital) | 29,750 | |
| Bank shares (64 wife purchased during marriage) | 27,200 | |
| Bank shares (10 owned by husband and A.T.)[9] | | 2125 |
| Bank shares (55 owned by husband and K.M.D.) | | 11,688 |
| Bank shares (60 owned by husband and A.P.D.) | | 12,750 |
| Bank shares (4 owned by wife and A.T.) | 850 | |
| Bank shares (4 owned by wife and K.M.D.) | 850 | |
| Bank shares (4 owned by wife and A.P.D.) | 850 | |
| Wife's 401(k) | 94,200 | |
| Husband's 401(k) | | 218,521 |
| Morning Sun stock (owned by husband and K.M.D.) | | 2500 |
| CISCO stock | | 4217 |
| Nokia stock | | 88 |
| Checking account in wife's name | 600 | |
| Savings account in wife's name | 600 | |
| Checking account in husband's name | | 31231 |
| Savings account in husband's name | | 1600 |
| Citicard credit card in husband's name | | (606) |
| United Missouri Bank credit card in husband's name | | (8011) |
| Bank credit card in husband's name | | (2185) |
| Target credit card in wife's name | (32) | |
| Casey's credit card in wife's name | (1277) | |
| Student loan for K.M.D. in husband's name | | (2000) |
| UMB credit card in wife's name | (2500) | |
| Debt regarding A.P.D.'s soccer activities | (400) | |
| | | |

[7] Adjustments for the premarital aspect of the membership units in KAW have already been made, as described earlier. Therefore, no further adjustment is made in the table regarding KAW.

[8] Due to the fact these shares are jointly owned by the husband and wife and the wife has been awarded these shares, the husband shall take all steps necessary to effectuate the transfer. On remand, the district court shall issue all orders needed to enforce this direction. This transfer and the other distribution of bank shares set forth in this table replaces the district court's order that the wife receive 232 bank shares.

[9] Regarding any shares jointly owned between a party and one of the children, the value was determined by multiplying the price per share ($425) times one-half of the number of shares (i.e., the undivided half shares owned by the party). So, for this item involving ten shares, the value was calculated by multiplying the undivided half (i.e., five shares) by $425 per share.

| Adjustments for Premarital Assets and Debts[10]: | | |
|---|---|---|
| -  Filmore Street real estate | (19,000) | |
| -  County Hwy D20 real estate | | (80,000) |
| -  County Hwy D20 real estate debt | | 41,125 |
| -  Vernon Drive real estate | | (40,000) |
| -  Vernon Drive real estate debt | | 16,500 |
| -  Bank shares (70 shares x $73/share) | (5110) | |
| -  Wife's 401(k) | (4300) | |
| -  Husband's 401(k) | | (27,000) |
| -  Morning Sun stock | | (1500) |
| | | |
| **Totals** | $  241,906 | $   439,519 |

Given the resulting disparity in the respective share of the marital estate each party is receiving, some redistribution is needed to achieve equity.  First, we find it appropriate to largely even up the parties' respective 401(k) accounts by requiring the husband to transfer $62,000 of his 401(k) to the wife via QDRO.[11] The district court is authorized to issue such a QDRO or any orders needed to effectuate the transfer.  *See In re Marriage of Brown*, 776 N.W.2d 644, 647–48 (Iowa 2009).  As explained above, we decline the husband's request to divide the retirement accounts of the parties using the percentage formula set forth in *Benson*, 545 N.W.2d at 255.

The above-referenced transfer via QDRO, while a good start, does not adequately remove the disparity in the respective share of the marital estate each party is to receive to achieve equity.  To achieve equity, the husband shall also pay the wife a property settlement of $37,000.[12]  The husband shall make such

---

[10] Regarding the adjustments, premarital assets will show as a deduction from that party's column, reflecting the fact the party is receiving the value of that item without having to account for it.  Conversely, premarital debts will show as an addition to that party's column.

[11] This replaces the district court's order for a $52,000 transfer via QDRO.

[12] This replaces the district court's order for an equalization payment of $165,000.

payment in full within 120 days of issuance of procedendo. No interest shall accrue on the amount owed if paid in a timely manner. If not paid in a timely manner, interest shall accrue at ten percent per annum starting on the 121st day following issuance of procedendo.

## VII. Appellate Attorney Fees.

Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *McDermott*, 827 N.W.2d at 687. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* Given the significant modification of the district court's order achieved by the husband, we decline to award the wife appellate attorney fees.

## VIII. Conclusion.

We modify the district court's decree as described in this opinion. We find it equitable for the husband to transfer $62,000 of his 401(k) to the wife and to make an additional property settlement payment of $37,000 to the wife. To the extent not modified, any other terms of the district court's order remain unchanged by this ruling. We remand to the district court for entry of any orders needed to effectuate the modification, including orders to protect the children's ownership interests in KAW. We decline to award appellate attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED.**