**IN THE COURT OF APPEALS OF IOWA**

No. 21-0149
Filed April 13, 2022

**IN RE THE MARRIAGE OF DAN CHARLES BARR
AND KELLY JOANN BARR**

**Upon the Petition of
DAN CHARLES BARR,**
        Petitioner-Appellant,

**And Concerning
KELLY JOANN BARR, n/k/a KELLY JOANN FRICK,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Clinton County, Stuart P. Werling,

Judge.


        Dan Barr appeals from the decree dissolving his marriage.  **AFFIRMED AS**

**MODIFIED.**


        Maria K. Pauly of Maria K. Pauly Law Firm, P.C., Davenport, for appellant.

        Wendy S. Meyer of Lane & Waterman LLP, Davenport, for appellee.


        Considered by May, P.J., Ahlers, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**MAY, Presiding Judge.**

Dan Barr appeals from the decree dissolving his marriage to Kelly Frick, formerly known as Kelly Barr. Dan claims the district court should not have awarded Kelly traditional spousal support. Both parties seek appellate attorney fees. We affirm as modified.

**I. Background Facts and Prior Proceedings**

Dan and Kelly married in 1995. They have three adult children. Both Dan and Kelly worked throughout the marriage. Kelly worked full-time as a registered nurse, often spending nights at the hospital while on call. But at the end of 2018, Kelly changed jobs due to the physical toll her job took on her, though she continued to work as a registered nurse. As a result of this change, Kelly's hourly rate decreased as did her hours worked per week. This resulted in a slight reduction in her annual gross income to $64,079.60. Dan worked various jobs over the years. In 2008, he started with Alliant Energy as a construction specialist. Then, in 2013, he was accepted into a system technician apprentice program with Alliant. Dan received a bump in pay during the program, which he completed in 2018. By the end of 2020, Dan made $112,410.17 in gross income.

In May 2020, Dan petitioned for dissolution. Kelly and Dan stipulated to all issues other than their earning capacities and spousal support.[1] In its decree, the court declined to impute additional income to Kelly after determining "[t]he toll of

---

[1] Dan and Kelly also did not stipulate to issues related to life insurance. In its decree, the district court determined, "Dan shall cooperate with Kelly in getting a life insurance policy on Dan's life to insure full payment of the above obligation. The premium payments shall be paid equally by Dan and Kelly." Neither party appeals from this provision.

decades of work as a surgical nurse has left her with constant arm, back and foot pain. Her current employment is the best and highest earning employment reasonably available to Kelly." Then the court awarded Kelly $1200 per month in spousal support until "the death of either party," "Kelly's remarriage or cohabitation with another party in an intimate relationship," or "30 days after the date upon which Kelly retires and begins receiving retirement benefits."

Dan appeals.

## II. Scope and Standard of Review

Dissolution proceedings are reviewed de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). However, we afford deference to the district court's factual findings, "particularly when considering the credibility of witnesses, but we are not bound by them." *In re Marriage of Fox*, 559 N.W.2d 26, 28 (Iowa 1997). So "we accord the trial court considerable latitude in" determining spousal support. *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). We will only "disturb the district court's 'ruling only where there has been a failure to do equity.'" *McDermott*, 827 N.W.2d at 676 (citation omitted); *see also In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016) (identifying "reasons to exercise 'de novo review with deference,' including: notions of judicial comity and respect; recognition of the appellate court's limited function of maintaining the uniformity of legal doctrine; recognition of the district court's more intimate knowledge of and familiarity with the parties, the lawyers, and the facts of a case; and recognition there are often undercurrents in a case—not of record and available for appellate review—the district court does and should take into account when making a decision").

## III. Discussion

On appeal, Dan argues Kelly is not entitled to spousal support. We disagree. As will be explained, though, we believe the district court's award must be modified.

Spousal support is not awarded as a matter of right and is instead awarded at the district court's discretion. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). "The district court has 'considerable latitude' in fashioning or denying an award of spousal support." *Id.* (citation omitted). The court's decision whether to award spousal support turns on the particular facts of each case. *Id.* However, Iowa Code section 598.21A(1) (2020) lays out specific criteria for the court to consider. Those factors are:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

Here, the district court awarded Kelly traditional spousal support. "Traditional spousal support is often used in long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'" *In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015) (citation omitted). "Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. This marriage lasted twenty-five years. And we can predict Dan's and Kelly's incomes with some reliability. Dan is now the top earner with overtime potential while Kelly's income is stagnant or susceptible to reduction as her health declines. So we agree with the district court that this case is a candidate for traditional spousal support.

In cases of "marriages of relatively long duration, '[t]he imposition and length of an award of traditional [spousal support] is primarily predicated on need and ability.'" *Id.* at 411 (first alteration in original) (citation omitted). This is where Dan takes issue. He contends Kelly is not in need of any support if we consider her income potential and her actual expenses. Indeed, Dan maintains Kelly overinflated her monthly expenses. But Kelly clarified her expenses at trial and none appear to be unreasonable or extravagant. And when assessing Kelly's current income and expenses, Dan considers Kelly's gross income instead of her net income after taxes and deductions. This paints a distorted picture of Kelly's financial reality. Dan also argues we should impute additional income to Kelly because she should be working forty hours per week. But we defer to the district court's finding that, in light of Kelly's health and other circumstances, her "current employment is the best and highest earning employment reasonably available to

Kelly." So we do not impute additional income to Kelly. And when we review the record as a whole and consider Kelly's net income versus her expenses as clarified at trial, as well as Dan's ability to pay, we conclude the court was right to grant a traditional award in a significant amount.

The more difficult question here is what *specific* amount shout be awarded. We "recognize the [district] court [is] in the best position to balance the parties' needs." *Gust*, 858 N.W.2d at 416.

So we afford the district court considerable latitude in determining spousal support. *Mann*, 943 N.W.2d at 20. If an award falls "within the range of equity," we will "refuse to tinker." *In re Marriage of Darrah*, No. 19-0285, 2020 WL 4200831, at *5 (Iowa Ct. App. July 22, 2020). All the same, our supreme court has made clear that we must scrutinize support awards and, when equity requires, we must modify them. *In re Marriage of Mauer*, 874 N.W.2d 103, 109 (Iowa 2016). After considering the record as a whole and the statutory factors, we conclude the spousal award should be reduced to $900 per month. We do not alter the duration of the award.

Both parties seek appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d at 687 (citation omitted). We decline to award either party appellate attorney fees.

**AFFIRMED AS MODIFIED.**